STATE OF IOWA, Appellant, v. JOHN GRISWOLD, Appellee.

No. 44298.

JUNE 21, 1938.

John H. Mitchell, Attorney General, Don W. Burington, Asst. Attorney General, and Arthur Braginton, County Attorney, for appellant.

Gray & Gray, for appellee.

RICHARDS, J.—Section 49, chapter 134, Acts 47th General Assembly, provides that every motor vehicle, trailer, and semi-trailer when driven or moved upon a highway shall be subject to the registration provisions of the chapter, except * * * "4. Any special mobile equipment as herein defined."

Section 1 of the act provides that, for the purposes of the chapter, the words "special mobile equipment" shall have ascribed to them the following meaning:

"15. *Special mobile equipment* means every vehicle not designed or used primarily for the transportation of persons or property and incidentally operated or moved over the highways, including road construction or maintenance machinery, ditch-digging apparatus and well-boring apparatus. The foregoing enumeration shall be deemed partial and shall not operate to exclude other such vehicles which are within the general terms of this paragraph."

By section 48 of the same chapter the driving on a highway of any vehicle of a type required to be registered, but which is not registered, is made a misdemeanor. Defendant was charged with having committed such an offense on September 7, 1937, by driving on a highway an unregistered vehicle hereinafter described. The state claimed the vehicle was required to be registered under section 49. The defense was that the vehicle was "special mobile equipment" and for that reason not subject to the registration provisions. The case reached the district court on appeal, and a verdict was there directed for defendant. The court's reason was that the vehicle in question came within the definition of "special mobile equipment" exempted by section 49 from the registration provisions of the act, and that, the driving of the vehicle on September 7, 1937, from one farm to another having been incidental to the purpose of grinding feed, and for no other purpose, the elements of the offense defined in section 48 had not been established. The state has appealed.

The vehicle was known as a feed grinder. It consisted of a grinding mill weighing 1,800 pounds and the motor, weighing 2,250 pounds, which furnished the power for the mill, all affixed permanently to the chassis of what had been a Ford truck. The mill and motor occupied practically all of the chassis excepting the cab, and were securely held to the frame of the chassis with bolts. There was apparently no unoccupied portion of the chassis

that was suitable for transportation of property. Holes for the bolts had been drilled in the frame of the chassis. After the mill and motor were so affixed it would have been necessary to seek a garage or other place where a lift or a hoist would have been available, in order to disassemble the mill and motor from the chassis, and one-half day's work for two men would have been required. The mill and motor had not been removed from the chassis after the original installation in November 1936. During the period from November 1936 to September 7, 1937, defendant, with this apparatus, had ground oats, corn, fodder, had filled silos, had ground alfalfa hay and other things in the feed line, for himself and for other farmers in the neighborhood, within a distance of about seven miles from his own farm home. In going to and from the places of doing this work he traveled upon the highways. The chassis was equipped with pneumatic tires and was capable of a speed of at least 40 miles per hour. The vehicle was not used for any purpose except that of operating the mill, nor for the transportation of passengers.

The definition above quoted indicates that vehicles that are "special mobile equipment" have two characteristics; first, they are not designed or used primarily for the transportation of persons or property; and second, they are incidentally operated or moved over the highways.

As to the first of these characteristics, appellant, pointing out that the truck was originally designed for the transportation of property, urges that there has been no change in that respect, except that the truck is now designed and used for the transportation of particular property, i. e., the mill and motor. It follows, according to appellant's argument, that the vehicle is still designed and used for the transportation of property. Appellant says that if the mill and motor were "just set on the vehicle and upon arriving at the job they were removed and set in the building or at the location where the grinding was to take place" no one would contend that the vehicle was not used for the transportation of property. Standing on this assumption appellant expresses the opinion that the fact that the "mill and motor were mounted on the truck and bolted down" does not "change the picture." We are inclined to think, however, that the picture to be envisioned from the definition is that of a vehicle that is specially equipped in such manner and with such permanency that the vehicle and the equipment is in reason to be

looked upon as constituting an integral whole. After the vehicle and the special equipment have been thus incorporated into one apparatus possessing the characteristics mentioned, we have what the legislature mentions, that is, a special equipment that is mobile. We do not agree with appellant, that, by way of argument, the thing may then be dissected and its various parts separately viewed as property that is being transported, when the apparatus is driven on the highways.

With respect to the second characteristic of special mobile equipments, i. e., that they are incidentally operated or moved over the highways, appellant discusses the word "incidentally", pointing out that among the definitions of the adjective "incidental" as found in Webster's New International Dictionary, Second Edition, is the following: "Happening as a chance or undesigned feature of something else." From this definition appellant extracts the thought that defendant's apparatus was never operated on the highways *incidentally* because the driving never happened as a chance. In the language of appellant, "'One of the necessary parts of grinding is to take the equipment to the place where the feed is located; so there is nothing incidental about its operations over the highway, but that movement is a prerequisite." It appears to us, however, rather improbable that the legislature had in mind the thought of chance or of something undesigned or unintended, when they used the word "incidentally" in connection with such a subject matter as driving on the highway. It seems more reasonable to look upon this word "incidentally" as characterizing the operation of a vehicle when the operating is something "naturally happening or appertaining, esp. as a subordinate or subsidiary feature," these meanings being found in the same authority among the definitions of the noun and the adjective "incident". In saying "incidentally operated" the legislature evidently had reference to such operation over the highways as naturally appertains to the use of the special mobile equipment.

It also appears to us that appellant's theory as to the meaning of "incidentally" would inject into this statute contradictions that, in all probability, were not within the legislative intent. That is, a well-boring apparatus driven on the highways from farm to farm for the purpose of reaching the place where the well is to be bored, as defendant's grinder was driven from farm to farm, is a special mobile equipment. If plaintiff's theory

is correct, then a well-boring apparatus, although within the class of special mobile equipment by express statutory inclusion, nevertheless would be excluded by reason of this portion of the definition which defines one of the necessary characteristics of special mobile equipment.

We conclude that the trial court did not err in holding that, in view of the facts shown, defendant's vehicle was a "special mobile equipment" not subject to the registration provisions of chapter 134, and that on September 7, 1937, defendant was incidentally operating over the highways, from one farm to another. We do not have before us a case in which the apparatus was used on the highways for some purpose outside that contemplated by the statute. Appellant points out that taxation is the rule and exemption the exception, and therefore strict construction of statutes, under which exemption is claimed, is the rule. Hale v. Iowa State Board of Assessment & Review, 223 Iowa 321, 271 N. W. 168. But it is also true that where a statute is plain, clear and unambiguous there is no room for construction. Fry v. Fry, 125 Iowa 424, 101 N. W. 144. Following the definition of special mobile equipment this statute provides, "The foregoing enumeration shall be deemed partial and shall not operate to exclude other such vehicles which are within the general terms of this paragraph." One of the things specifically included is well-boring apparatus. We have pointed out that such apparatus is moved about the highways from farm to farm, as are feed grinders. No substantial distinctions have been called to our attention. No ambiguity in the language the legislature chose to use has been pointed out. Whether the general purpose was betterment of agriculture is not indicated in the act, although another exemption found in section 49 is "any implement of husbandry". The case is affirmed.—Affirmed.

Chief Justice and all Justices concur.