### STATE ex YONTZ v WEST

Ohio Appeals, 2nd Dist, Franklin Co

Decided Nov 2, 1938

Stanley A. Silversteen, Cincinnati, for relator.

Herbert S. Duffy, Attorney General, Columbus, and Theodore B. Ochs, Asst. Attorney General, Columbus, for respondent.

Connor & Nester, Columbus, amicus curiae.

### OPINION

By GEIGER, J.

Relator says that he is a citizen and taxpayer, the owner of a motor vehicle and the holder of a driver's license; that the respondent has refused to collect the motor vehicle license tax as provided by §6291 GC from owners and operators of cement mixing motor conveyances; that such vehicles consist of a truck chassis, self propelled by a gasoline motor; that permanently attached to such chassis is a rotating drum or hopper rotated by either the propelling motor or an auxiliary motor; that cement, sand, gravel, water and all necessary ingredients for the manufacture of concrete are placed in said drum and by this rotary motion are mixed into concrete while the vehicle is traveling over the highways; that the sole use of the motor propelled truck is for transportation purposes; that the mixing device can be used to transport and convey materials to mix concrete ingredients enroute to the job or to convey said materials and then mix them after arriving at their destination.

Relator futher says that the defendant has instructed his registrars to refuse to collect the license tax from the owners of such cement-mixing vehicles and has advised the mayors of the cities and villages that such vehicles are not required to have

or display tags; that the vehicle described is a motor vehicle as defined by §6290, GC, and that such a license tax is required thereon by §§6291 and 6292, GC.

It is further alleged that to exempt such vehicles from payment of tax, the State of Ohio and its subdivisions are deprived of thousands of dollars in revenue. It is alleged that relator requested the registrar to collect such tax and the attorney general to require the collection thereof, both of which requests have been refused.

Plaintiff prays for a mandamus against Frank West, Registrar of Motor Vehicles, requiring him to administer the laws of the state by collecting the license tax from owners of cement-mixing vehicles and to require him to rescind the instructions issued by him to deputy registrars and enforcement officials.

The respondent answers making certain admissions among them that he has refused to collect the tax provided by §6291, GC; admits the construction, purpose and operation of the mixers is substantially as alleged; admits notice upon him and his refusal.

For second defense he alleges that the cement-mixing equipment described in the petition is used in construction work and not designed for or employed in general highway transportation, and that by reason thereof is excepted from the legislative definition of motor vehicles and therefore is exempt from imposition of the tax.

Agreed statement is filed establishing much of the petition and stating that there were approximately 400 such cement-mixing vehicles licensed in the state for the years 1937-38 upon which the motor tax of approximately $80,000 was paid. It is agreed that the Jaeger truck mixers and agitators when mounted on truck chassis are typical of the vehicles in question; that the mixing equipment can be mounted on any standard automobile truck chassis; that any standard automobile chassis used could be fitted with a truck body as well as the mixing apparatus; that the equipment can be dismounted from the chassis without any effect either on it or the truck; that the catalogue describing the Jaeger truck mixers is substantially descriptive of all mixers; that cement, sand, gravel, water and all other ingredients of concrete are placed in said drum or hopper and as a usual practice, the same is caused to rotate while the vehicle is moving over the highways, thus mixing the concrete while in transit, but it is not essential that the hopper rotate while in transit. To this answer is attach-

ed the notice of Frank West, Registrar of the State of Ohio, issued to all police, enforcement officials and deputy registrars in which the statute is quoted and the attorney general's opinion holding that such vehicles are exempt from the license-plate tax, are referred to. The registrars are instructed to recognize the operation of vehicles upon which are mounted asphalt and tar-spreading units or cement-mixing units without license plates when such vehicles are used in construction work.

Paragraph 2 of §6290 GC defines a motor vehicle as follows so far as applicable to this case:

"Motor vehicle means any vehicle * * * except road rollers, traction engines, power shovels, power cranes and other equipment used in construction work and not designed for or employed in general highway transportation, oil-drilling machinery, ditch digging machinery, farm machinery, threshing machinery, hay-baling machinery and agricultural tractors and machinery used in the production of horticultural, agricultural and vegetable products."

It is claimed by the respondent that the emphasized portion of the above quoted section authorizes the order of exemption issued by registrar.

Sec 6291, GC, provides for the payment of the license. It may be well to consider this statute in detail. The pertinent parts are as follows.

"An annual license tax is hereby levied upon the operation of motor vehicles on the public roads and highways of this state, for the purpose of enforcing and paying the expense of administering the law relative to the registration and operation of such vehicles, maintaining and repairing public roads, highways, and streets and paying the counties' portions of the costs," etc.

It is thus provided that the tax is to be devoted to purposes incident to the maintaining and the repairing of the highways and for other incidental purposes.

Interesting and instructive briefs have been filed which have had the court's attention. A large portion of the briefs is devoted to the question of whether or not the exemption as enforced by the registrar would constitute a violation of several sections of the Ohio and Federal Constitution especially §2 of the Bill of Rights, §1 of the 14th Amendment and §26 of Article

**II of the Ohio Constitution,** which latter provides that all laws of a general nature shall have a uniform operation throughout the state. We will defer the constitutional question until after we have examined the other issues presented.

The Jaeger catalogue, exhibit 2 which is admitted to be typical of other equipment used for the same purpose, is replete with illustrations demonstrating the operation of the device and it may be noted that in almost every case the device is mounted upon a truck or chassis. Much of the reading matter is devoted to the advantages that may be derived from the operation of the mixing devices on a moving truck. We might note on page 13 the statement, "The number of pay loads per day determines the gross earnings of your plant. The speed and flexibility of your truck mixer determines the number of pay loads you can haul." Page 17, "ability to deliver concrete into forms, at any point or simultaneously to several points along the job has made sewer contractors big users of Jaeger truck mixed concrete." Page 29 is captioned "Efficiency-Bigger Profits, Power from Truck or Separate Engine Drive." On page 33, "it is obvious that the more quickly your truck mixers can be loaded and started on their trips the more trips they can make per day." Pages 38 and 39 illustrate the use of the truck mixers on various projects, other than highway construction. Page 40 sets out that the two cubic yard agitator mounts on wheel base of a number of named and other light utility trucks. On page 43 it is stated that "the Jaeger one yard 'express' unit is in demand in smaller cities where lighter, faster outfits, that have a low cost because they can be mounted on husky, light and fast trucks like the present Ford, are wanted, it makes the ideal unit for smaller jobs—rush deliveries—clean-up work on big jobs—curb and gutter—bridge work —widening and maintenance of road work." Page 50 gives an illustration and states that the agitators are built in five sizes, "truck engine or separate engine power." Page 51 illustrates the loading of the hopper mounted on the truck from a larger, stationary mixing device.

It is not necessary to further point out that the catalogue made an exhibit demonstrates that the mixing device is more efficient because of its ready transportation of cement to the job, by being mounted on motor trucks. There is no limitation of the use to which the device may be profitably used in all work in which a cement mixed is required. The transportation over the highways and streets of the cities is an essential element of the economies to be secured by the use of the mixer. It is urged upon the part of the respondent that the device falls within the exception "Used in construction work and not designed or employed in general highway transportation."

It goes without arguing that,

"There is no presumption favorable to the exemption of property from taxation. An exemption from taxation must be clearly and expressly stated in the statute and must be such only as is authorized by the Constitution." **Cullitan, Attorney General v Cunningham Sanitarium, 134 Oh St 99, 11 O.O. 539.**

This section has been amended numerous times largely for the purpose of defining the scope of the exemptions.

It will be observed that the named exemptions largely relate to slow moving vehicles or machinery that may be used upon the job and upon the farms. This is not the purpose of the device in question; its purpose is to quickly move over the highways to the place of use, material which has either previously been mixed or is mixed while being transported. If it has been mixed at a central plant before loading into the drums the agitation created by the transportation and the proper devices keeps the cement in a fluid state during transportation.

It has been urged that the mixing motor conveyances generally are not designed for and can not be employed in general highway transportation but are strictly confined to moving cement mixture to the place where the same is deposited upon the work under construction. The same thing may be said of numerous specially constructed vehicles. The highways are clogged with heavy trucks upon which large tanks are placed by means of which oil and gas are transported over the highway to the gas stations where they are delivered to the retail customer. There are many specially constructed bodies such as those used for hauling groceries, transporting cattle and horses, farm products and manufactured goods, all of which are definitely devoted to a single purpose and are not designed for or employed in general highway transportation, if by "general" we mean a transportation without restriction as to the load carried. Any vehicle that is designed for transportation of objects and adapted to general transportation of special

freight is still a motor vehicle under the definition of §6290 GC.

But it is said that the vehicle in question is "used in construction work." The motive power is no different and the transportation afforded cannot be distinguished from the transportation by an ordinary truck upon which the unmixed stone and cement may be transported over the highways for the purpose of reaching the place where it is to be used and no one would urge that these trucks should be exempted on the ground that they are used in construction work. The fact that the material finally deposited on the job is processed as the truck proceeds along the highway does not in our judgment bring the equipment within the exemption clause of the statute. The very purpose for which the fee is collected as provided by §6291, GC, indicates as much reason to collect it from the █ moving cement mixer as from any other character of truck hauling material to the job which is finally used "in construction work."

Taking this view we do not find it necessary to consider the constitutional questions raised by counsel and the same are not decided.

The writ will be allowed as prayed for.

BARNES, PJ, and HORNBECK, J, concur.