Crown Concrete Company, appellant, v. M. L. Conkling et al., constituting the Board of Supervisors of Polk County, appellees.

No. 48889.

(Reported in 75 N.W.2d 351)

MARCH 6, 1956.

Abramson & Myers, of Des Moines, for appellant.

Leo J. Tapscott, County Attorney, J. R. McManus, A. R. Shepherd, Harold H. Newcomb, and Don C. Swanson, all of Des Moines, for appellees.

GARFIELD, J.—The vital question presented by this appeal is whether, by reason of Code section 321.130, plaintiff's concrete mixers mounted on trucks are not subject to a personal property tax. (All Code references are to the Code of 1954.)

During the five years from 1949 to 1953 inclusive plaintiff owned from 15 to 23 such mixers on which it paid Polk County personal property taxes totaling $6832.77. During those years plaintiff also paid on its 15 to 23 trucks motor vehicle registration fees totaling $33,075.50, roughly about $350 per year on each truck. These fees were computed on the gross weight of each truck, including the chassis, the mixer and the maximum load of concrete to be carried. Each empty truck, without the mixer, weighed from 9500 to 10,080 pounds. Each mixer weighed from 6000 to 6800 pounds. The maximum load of concrete weighed as much as 16,200 pounds.

Plaintiff brought this mandamus action against the county board of supervisors to require the refund of the $6832.77 of personal property taxes as "erroneously or illegally exacted or paid" within the meaning of Code section 445.60, by reason of the pro-

vision of section 321.130 that "if a motor vehicle * * * shall have been registered * * * it shall not thereafter be subject to a personal property tax." Following trial to the court relief was denied and plaintiff has appealed.

Plaintiff is engaged in selling ready-mix concrete and other building materials in and near Des Moines. Most people are probably familiar in a general way with these truck-mounted concrete mixers. They are frequently seen on city streets. The mixers are purchased separately from the trucks and then securely and permanently mounted thereon. Rarely is a mixer removed from the truck on which it is mounted. Such removal would take two men a day and a half. The main part of each mixer is a revolving drum which holds the mixture. There is also a gasoline engine which rotates the drum, a hopper through which the drum is filled and a chute used in unloading the concrete at its destination.

The concrete is made of cement, sand, crushed rock or gravel, and water. These ingredients are dumped into the mixer at plaintiff's plant. This takes about three minutes for each load. The ingredients are then rotated in the drum about five minutes. The mixer is then slowed down from mixing speed to agitating speed and the load is delivered. On long hauls it is necessary to keep the concrete agitated to prevent it from setting. On short hauls the drum does not revolve after the truck leaves plaintiff's plant.

I. It seems desirable to quote in full Code section 321.130 on which plaintiff bases its claim these mixers are not subject to a personal property tax:

"The registration fees imposed by this chapter upon private passenger motor vehicles or house trailers or semitrailers shall be in lieu of all taxes, general or local, to which motor vehicles or house trailers or semitrailers may be subject, *and if a motor vehicle or house trailer or semitrailer shall have been registered at any time under this chapter it shall not thereafter be subject to a personal property tax* unless such motor vehicle or house trailer or semitrailer shall have been in storage continuously as an unregistered motor vehicle or house trailer or semitrailer during the preceding registration year or unless the same is actually

being used for dwelling purposes for more than six months during each calendar year. This section shall not apply to occupied mobile homes." (Italics added.)

Obviously the cement mixers are not part of a private passenger motor vehicle, house trailer or semitrailer. Thus the language preceding that italicized by us clearly entitles plaintiff to no relief. Plaintiff relies on the italicized provision. It may be reduced to this: "if a motor vehicle * * * shall have been registered * * * it shall not thereafter be subject to a personal property tax * * *." It is admitted that exceptions in section 321.130 which follow the language just quoted do not apply here. Plaintiff argues these mixers are integral parts of the motor vehicles that were registered and therefore are not subject to the tax for which refund is claimed.

The legislature has defined in section 321.1 the terms used in chapter 321, in which section 321.130 is found, for purposes of the chapter. These definitions include, so far as pertinent here:

"1. 'Vehicle' means every device in, upon, or by which any person or property is or may be transported or drawn upon a highway, excepting devices moved by human power or used exclusively upon stationary rails or tracks.

"2. 'Motor vehicle' means every vehicle which is self-propelled but not including vehicles known as trackless trolleys which are propelled by electric power obtained from overhead trolley wires, but not operated upon rails. * * *

"4. 'Motor truck' means every motor vehicle designed primarily for carrying livestock, merchandise, freight of any kind, or over seven persons as passengers.

"24. 'Gross weight' shall mean the empty weight of a vehicle plus the maximum load to be carried thereon. * * *."

Code section 321.119 states in effect that the annual registration fee for motor trucks equipped with pneumatic tires shall be based on their gross weight. This of course means gross weight as above defined in 321.1, paragraph 24.

Section 321.105 requires payment of an annual registration fee for every motor vehicle "operated upon the public highways of this state unless said vehicle is specifically exempted under the provisions of this chapter."

Section 321.18 provides in six numbered paragraphs that certain vehicles therein referred to are not subject to the registration provisions of chapter 321. None of these exemptions from registration requirements has any application to plaintiff's mixers except perhaps the fourth, "Any special mobile equipment as herein defined." We will later consider whether, as the trial court found, plaintiff's trucks are "special mobile equipment" so the language of section 321.130 on which plaintiff relies is rendered inapplicable.

Taxation is the rule, exemption the exception. This is the effect of Code section 427.13. Thus plaintiff's mixers were subject to the tax for which refund is claimed unless section 321.130 provides to the contrary. Further, a tax exemption law such as 321.130 is strictly construed and a claim for exemption under it must be clearly shown to be within the letter and spirit of the law. Jones v. Iowa State Tax Comm., 247 Iowa 530, 534, 535, 74 N.W.2d 563, 565, and citations. See also 84 C. J. S., Taxation, section 225; 51 Am. Jur., Taxation, section 527.

Undoubtedly plaintiff's trucks are registered motor vehicles within the meaning of section 321.130. If a truck and the mixer mounted on it are to be viewed as an integral whole it seems the mixer, as well as the chassis, clearly falls within the statutory exemption from personal property tax. If however the mixer and the truck may be viewed as separate pieces of property and the mixer may be dissected from the truck for the purpose of subjecting it to the tax here in dispute, of course section 321.130 does not exempt the mixer.

We do not think the mixer may be dissected from the truck for such purpose. See as bearing on this State v. Griswold, 225 Iowa 237, 280 N.W. 489. The evidence clearly shows each mixer is in fact an integral part of the truck upon which it is mounted, the whole constitutes a single unit and is used as such. The entire unit falls within the statutory definitions of motor vehicle and motor truck, heretofore quoted. As previously indicated, there is no claim it falls within any of the several exemptions found in section 321.18 to the motor vehicle registration requirements, except that it is "special mobile equipment as herein defined."

Section 321.1, paragraph 17, provides: "'Special mobile equipment' means *every vehicle* not designed or used primarily for the transportation of persons or property and *incidentally operated or moved over the highways,* including road construction or maintenance machinery and ditch-digging apparatus. The foregoing enumeration shall be deemed partial and shall not operate to exclude *other such vehicles* which are within the general terms of this subsection; provided that nothing contained in this section shall be construed to include portable mills or cornshellers mounted upon a motor vehicle or semitrailer." (Italics added.)

As stated, the trial court found "A truck with a concrete mixer permanently mounted thereon is special mobile equipment as defined in section 321.1, paragraph 17." The court apparently considered the truck and mixer as a single unit in arriving at this finding. Under this finding plaintiff was not required to pay any motor vehicle registration fee on its trucks—it paid out therefor more than $33,000 to which the state was not entitled. See section 321.18, paragraph 4.

We are unable to agree with this finding. Incidentally, its acceptance would result in much greater financial disadvantage to the public and corresponding gain to taxpayers than would follow from the exemption of such trucks, including the mixers, from personal property tax. The registration fees on plaintiff's trucks during the five years in question here were, roughly, about twice the amount of personal property tax that would have been assessed against the trucks, including the mixers.

In any event, it may not fairly be said plaintiff's trucks, equipped as they were, are "not designed or used primarily for the transportation of * * * property and incidentally operated or moved over the highways, * * *." (Section 321.1, paragraph 17.) If plaintiff had refused to register its trucks on the ground they were "special mobile equipment", as above defined and as the trial court found, certainly it would have assumed a much heavier burden than it has in the present case. See in support of our conclusion State ex rel. Yontz v. West, 61 Ohio App. 382, 22 N.E.2d 645, which holds trucks on which are mounted Jaeger concrete mixers are not exempt from registration fees under a

statute generally similar to our statutory exemption from such fees of special mobile equipment. The Jaeger mixer is one of two types mounted on plaintiff's trucks here.

We see little distinction on principle between a truck-mounted concrete mixer and a refrigerated truck body, equipped with separate motor and compressor, for transportation of meat or other perishables. Or between such a mixer and a truck-mounted tank for transporting gasoline, a rack for transporting livestock, or a specially built body for loading and dumping or spreading crushed rock or lime. It appears none of these was assessed for personal property tax. It is common knowledge that a specially built truck body is frequently attached to the chassis after its purchase by the owner.

The trial court's conclusions of law state, "Such a truck, so equipped, is not subject to a motor vehicle tax (registration fee) except as to the truck proper." Also, "Plaintiff's remedy, if any, is to challenge that part of the motor vehicle tax (registration fee) chargeable to the mixer." Obviously these conclusions are in conflict with the finding heretofore quoted that a truck with a mixer mounted thereon is special mobile equipment. No registration fee at all is required upon such equipment. We are clear these conclusions of law are just as unsound as the above finding.

If, as the trial court apparently felt in reaching these two conclusions of law, the mixer should be separated from the chassis in computing the amount of the motor vehicle registration fee so that no fee should be paid on the mixer as part of the truck, clearly the weight of the mixer should be included in computing "the maximum load to be carried" within the meaning of section 321.1, paragraph 24. As we have pointed out, weight of the maximum load, as well as the empty weight of the vehicle, is included within the "gross weight" on which the registration fee is computed. In other words, if it might be said the mixer is not part of the vehicle, certainly it would be part of the load and the fee is computed on the combined weight of vehicle and load.

Defendants undertake to defend the trial court's two conclusions of law quoted above and quite a little of their argument

is an attempt to demonstrate that a motor vehicle registration fee was not required to be paid on the mixers. The trial court also tries to justify its decision on the same ground—that no registration fee was legally due on the mixers. Of course the ultimate issue here is plaintiff's right to a refund of the property tax it paid on the mixers. However, the case seems to have simmered down quite largely to a disagreement as to whether the mixers are exempt from a property tax, as plaintiff contends, or subject to such tax *but not to the motor vehicle registration fee,* as defendants assert and the trial court held.

Both the trial court and defendants recognize the injustice of compelling plaintiff to pay both the property tax and the registration fee on the mixers. We have already expressed our belief the registration fee on each of plaintiff's trucks is properly computed on the weight of the mixers as an integral part of the truck, as well as the rest of the vehicle and the maximum load.

 Our conclusion has the support of an opinion dated March 16, 1954, by the then state attorney general and his special assistant for the state tax commission that a cement mixer permanently mounted on a licensed truck, where the registration fee is based on the combined weight of such truck, mixer and load, is not, by reason of Code section 321.130, subject to assessment for personal property tax. It appears the taxing officials of Polk County in reliance upon this opinion made no attempt to assess such mixers as personal property after 1953. Although this opinion is not conclusive or binding upon us it should have respectful consideration even though it was issued only about two years ago. See 5 Am. Jur., Attorney General, section 14, page 244; Article by Chief Justice Robert L. Larson, 41 Iowa Law Review 351, 363 to 368. The opinion appeals to us as sound and we are disposed to follow it.

Defendants have called attention to an opinion of the attorney general of Ohio dated October 13, 1954, to the effect that lime spreaders attached to a truck chassis are "not inherently motor vehicle equipment" in determining the weight of the vehicle for registration purposes and therefore are not entitled to exemption from personal property tax. The opinion is of little aid to defendants. It is largely based on a 1939 statute which

provides: "The weight of all motor vehicles shall be the weight of the vehicle fully equipped as determined on a standard scale, except the weight of any machinery mounted upon or affixed to a motor vehicle and which is not inherently motor vehicle equipment shall not be included in the determination of the total weight."

We have no such statute. On the contrary, as previously pointed out, our registration fee is computed on the gross weight of the vehicle, which includes its weight when empty plus the maximum load to be carried. Code sections 321.119, 321.1, paragraph 24. The Ohio attorney general's opinion is also based in part upon an Ohio trial judge's decision which seems to be contrary to State v. Griswold, supra, 225 Iowa 237, 280 N.W. 489, decided more than four years later.

II. Another issue is in the case. Defendants pleaded and argue in print plaintiff is estopped to claim a refund because it voluntarily paid the personal property tax in question. Defendants' counsel told us in oral argument they do not rely upon this defense except perhaps as to a claim for interest. Although this may have been a waiver of the defense of estoppel, we prefer to decide it. We are clear this defense is without merit.

Code section 445.60 provides: "The board of supervisors shall direct the treasurer to refund to the taxpayer any tax * * *, found to have been erroneously or illegally exacted or paid, with all interest and costs actually paid thereon."

Because of this statute we have uniformly held mandamus lies to compel the refund of taxes erroneously or illegally paid even though payment was voluntary. Jewett Realty Co. v. Board of Supervisors, 239 Iowa 988, 995, 33 N.W.2d 377, 381, 382, and citations; Eyerly v. Jasper County, 72 Iowa 149, 33 N.W. 609.

It follows from our holding these truck-mounted mixers were exempt from property tax that such tax was erroneously or illegally paid within the meaning of 445.60 and it is defendants' mandatory duty to direct the treasurer to refund it. Commercial National Bank v. Board of Supervisors (Ladd, J.), 168 Iowa 501, 504, 150 N.W. 704, Ann. Cas. 1916C 227, and citations.

We have held, however, no interest is allowable under the above statute on the amount of tax paid. Plaintiff's claim for interest on the amount it paid must therefore be denied. Home Savings Bank v. Morris, 141 Iowa 560, 562, 120 N.W. 100; Wieting v. Morrow, 151 Iowa 590, 596, 132 N.W. 193. See also Schlesinger v. State, 195 Wis. 366, 218 N.W. 440, 57 A. L. R. 352, and annotation 357, 362.

For decree in harmony herewith this cause is—Reversed and remanded.

All JUSTICES concur.