**BURLINGTON NORTHERN RAILROAD COMPANY,**
Appellant,

v.

**BOARD OF SUPERVISORS OF ADAIR COUNTY and Adams, Appanoose, Cass, Clarke, Decatur, Des Moines, Dubuque, Fremont, Henry, Jefferson, Lee, Louisa, Lucas, Lyon, Marion, Mills, Monroe, Montgomery, Page, Plymouth, Polk, Pottawattamie, Sioux, Taylor, Union, Van Buren, Wapello, Washington, Wayne, and Woodbury Counties,**
Appellees.

No. 86–1329.

Supreme Court of Iowa.

Jan. 20, 1988.

Rehearing Denied Feb. 12, 1988.

Richard A. Malm and Elaine M. Brown of Dickinson, Throckmorton, Parker, Mannheimer & Raife, Des Moines, James W. McBride of Laughlin, Halle, Clark, Gibson & McBride, Washington, D.C., and Steven D. Goodwin of Laughlin, Halle, Clark, Gibson & McBride, Memphis, Tenn., for appellant.

Lee H. Gaudineer of Austin & Gaudineer, Des Moines, for appellees.

HARRIS, Justice.

A railroad prevailed in a federal court challenge to Iowa's scheme for taxing personal property and thereafter brought this mandamus action to compel refunds from defendant counties. The trial court denied relief upon finding the railroad had failed to exhaust its administrative remedies. Because we think the railroad is entitled to the refunds, we reverse and remand.

Plaintiff, Burlington Northern, is a railroad subject to the jurisdiction of the interstate commerce commission. Defendants are boards of supervisors in thirty-one Iowa counties in which Burlington Northern has operated.

Iowa law provides that railroad property, unlike other property, is not assessed locally for taxation. Under Iowa Code chapter 434, the department of revenue assesses and values the property of each rail carrier. The department then certifies the valuations to the board of supervisors of each county. Each county auditor is certified a percentage of a rail carrier's total statewide valuation, based upon the number of rail miles for the carrier in that county. The auditor then computes the tax levy for the following year and forwards it to the county treasurer, who then collects the tax.

This dispute is rooted in legislation adopted in 1973 which gave preferential treatment to personal property. *See* 1973 Iowa Acts ch. 255. One form of preference was the "rolling back" of the assessed value of all personal property to 1973 levels. Iowa Code § 427A.11 (1985). A second preference was to grant credits against the assessed value of personal property. Iowa Code §§ 427A.2, .9. Under the statutory scheme all property traditionally considered personal property which is owned by a railroad is nevertheless taxed as real property. Iowa Code § 427A.1(1)(h).

Burlington Northern filed suit in the United States district court against the director of the Iowa department of revenue, claiming the tax scheme violated section 306(1)(d) of the railroad revitalization and regulatory reform act of 1976, 49 U.S.C. section 11503 ("4-R" act). The 4-R act prohibits states from taxing property of railroads differently from the manner in which it taxes other commercial and industrial property. The federal district court held the director was withholding the benefits of chapter 427A from Burlington Northern in violation of the 4-R act. *Burlington N.R.R. v. Bair*, 584 F.Supp. 1229 (S.D.Iowa 1984). Thus, that portion of Burlington Northern's property which is commonly characterized as personal property is to be given the benefits of chapter 427A. This ruling was affirmed on appeal. *Burlington N.R.R. v. Bair*, 766 F.2d 1222 (8th Cir.1985).

After prevailing in federal court Burlington Northern filed a written request with each board of supervisors in the thirty-one counties in which it operates, seeking a refund for that portion of its 1979, 1980 and first half of 1981 taxes which the federal court determined had been illegally exacted. The various boards of these counties refused to order the refunds. This suit in mandamus followed.

The trial court dismissed the petition for lack of subject matter jurisdiction and entered judgment for the defendants.

I. The parties claim support for their conflicting positions in two unrelated statutory provisions. In seeking to sustain the trial court's view the counties point to provisions for an administrative appeal by taxpayers who are dissatisfied with their assessment. Iowa Code section 421.1 establishes the state tax review board within the department of revenue to consider taxpayers' appeals from their assessments under the administrative procedure Act (Iowa Code ch. 17A). Under Iowa Code section 441.37(2) aggrieved taxpayers can bring such an appeal.

It is clear under the scheme that an aggrieved taxpayer must protest the assessment through the administrative process, including appeal, before bringing the complaint to court. *Farmers Grain Dealers Ass'n v. Woodward*, 334 N.W.2d 295, 300 (Iowa 1983). The trial court based its dismissal of the present case on this principle.

The railroad points to a special refund statute. Iowa Code section 445.60 provides:

> The board of supervisors shall direct the treasurer to refund to the taxpayer any tax or portion thereof found to have been erroneously or illegally exacted or paid, with all interest and costs actually paid thereon.

Cases interpreting this provision hold it creates a direct right. Mandamus will lie to compel a refund due under it and a pursual of administrative relief is not a condition precedent for such an action. *Crown Concrete Co. v. Conkling,* 247 Iowa 609, 617, 75 N.W.2d 351, 356 (1956); *Morrison–Knudsen Co. v. State Tax Comm'n,* 242 Iowa 33, 45–46, 44 N.W.2d 449, 456 (1950).

Contrary to the counties' contention we think our *Crown Concrete* and *Morrison–Knudsen* holdings are still the law. These holdings were not vitiated by the 1975 adoption of the administrative procedure Act. The right to a tax refund under section 445.60 is a direct one that arises when a tax has been "found to have been erroneously or illegally exacted."

It is difficult to imagine facts more squarely within the parameters of the section. The finding of entitlement was entered by a federal court and affirmed on appeal. The finding was that the taxes in question were exacted in contravention of a federal statute. They were therefore illegal. The federal court was specific in determining, not only that taxes had been illegally exacted from Burlington, but also how much:

> We hold that section 306(1)(d) prohibits the Director from excluding fifty percent of Burlington's Iowa property from the benefits of taxation as personal property.

*Burlington N.R.R. Co.,* 766 F.2d at 1224–25.

It is now suggested that boards may be faced with other questions appropriate for administrative action. The spector is raised of unspecified time bars or the need to reevaluate the property on a basis comparable to other taxpayers for the years in question. We think it is wholly inappropriate to accord the administrative agency the power of review over the clear federal court adjudication. All that remains are mathematical computations, which, though they are perhaps complex, scarcely qualify as demanding technical expertise of an administrative agency.

The railroad is entitled to recover for the taxes which have been adjudged illegally exacted. We should not alter or compromise that adjudication by committing the winner of the lawsuit to work again through the administrative process. The trial court erred in concluding this action is barred by the failure to exhaust administrative remedies.

II. Because of its holding the trial court did not consider three other grounds urged in defense of the mandamus action. The counties put forth three such arguments: (1) the federal court's ruling should be prospective only; (2) Burlington Northern failed to establish that the director's action was arbitrary and capricious; and (3) Burlington Northern is estopped from bringing this action. A ruling should not be disturbed on appeal if it was proper on another ground which was urged in trial court. *Buchhop v. General Growth Properties,* 235 N.W.2d 301, 305 (Iowa 1975). We find no merit in any of the three alternative claims.

■ In contending the federal court's holding should be prospective only the counties argue that the government has an interest in allocating its resources and must know when it acts on an expenditure that the necessary funds are available and not subject to loss through tax refund. *G. Heileman Brewing Co. v. City of La Crosse,* 105 Wis.2d 152, 162, 312 N.W.2d 875, 880 (1981). We rejected this contention in *Commercial Nat'l Bank v. Board of Supervisors,* 168 Iowa 501, 504, 150 N.W. 704, 705 (1915). After holding a statutory scheme had resulted in illegal exaction of taxes from a national bank, we said "nor is there anything in the argument that the decision declaring the taxing statute invalid should not operate retroactively."

■ We do not think the suit should have been dismissed because the railroad did not establish that the department of revenue's action was arbitrary and capricious. The counties contend the railroad had such a burden. The flaw in this argument is that the railroad is not challenging the director's judgment in assessing the property's valuation. Rather, Burlington Northern contends that Iowa's tax scheme resulted in the illegal exaction of taxes and that the counties refused to order refunds under section 445.60. The railroad did not allege, nor does it have the burden of proving, that the director abused his discretion in the assessments of Burlington Northern's property.

■ The counties last argument is that the railroad is barred from the refund under principles of collateral estoppel. In this contention the counties seize on the federal court's refusal to directly order the refunds now sought. The contention does not square with the basis for the reversal. The federal court determined it lacked jurisdiction to order the refund. *Burlington N.R.R.*, 584 F.Supp. at 1232. Where a judgment is dismissed for lack of jurisdiction it ordinarily does not bar another action on the same claim.[1] Restatement (Second) of Judgments § 20 (1982). The federal court's dismissal of the refund request does not bar the railroad from pursuing the same request in state court.

We conclude that the judgment of the trial court must be reversed and the case remanded for issuance of a writ directing payment of the refund.

REVERSED AND REMANDED.

All Justices concur except CARTER, SCHULTZ, and NEUMAN, JJ., who dissent and ANDREASEN, J., who takes no part.

CARTER, Justice (dissenting).

I dissent.

It is manifestly inappropriate to try the issues of the present controversy in a man-

damus action. I submit that the majority's failure to recognize this stems, at least in part, from a mistaken belief that we are dealing with liquidated amounts for which the various boards of supervisors could have ordered warrants. This was clearly not the case.

The United States district court which granted plaintiff relief made it clear that this was only prospective declaratory and injunctive relief. *See Burlington N.R.R. v. Bair*, 584 F.Supp. 1229, 1242 (S.D.Iowa 1984). The limitations which inhere in the eleventh amendment precluded the federal court from making any determination concerning plaintiff's entitlement to a refund of taxes previously collected. Nothing in the federal court's decree serves to excuse the plaintiff from establishing its entitlement to a refund in accordance with the statutes and administrative regulations imposed by state law. Consequently, the state is free to urge that plaintiff's claims are untimely or that administrative remedies have not been exhausted. *See, e.g., Randall v. Lukhard*, 709 F.2d 257, 269–70 (4th Cir.1983).

The boards of supervisors of the various counties were in no position to answer these legal questions at the time of plaintiff's demands. Indeed, there is no such legal authority conferred on the supervisors. Nor had the supervisors been parties to the federal court litigation. The theory of a mandamus action is that a public official, enjoined by law to perform an act, has illegally failed to do so. *Birusingh v. Knox*, 409 N.W.2d 189, 191 (Iowa 1987). There is simply no basis for making such a claim on the present facts.

The majority reads far too much into the sketchy provisions of Iowa Code section 445.60 (1983). That statute provides as follows:

The board of supervisors shall direct the treasurer to refund to the taxpayer any tax or portion thereof found to have been erroneously or illegally exacted or

1. Such a dismissal is preclusive as to the jurisdictional issue in the same forum. *Bascom v. Jos. Schlitz Brewing Co.*, 395 N.W.2d 879, 882 (Iowa 1986). This exception does not preclude parties from thereafter seeking relief in the proper forum.

paid, with all interest and costs actually paid thereon.

In applying this statute, it is more important to note what it does not provide than what it does. It does *not* in any way deal with how or by whom the requisite finding that a tax has been "erroneously or illegally exacted or paid" is to be made.

As the majority indicates, there are cases such as *Crown Concrete Co. v. Conkling,* 247 Iowa 609, 75 N.W.2d 351 (1956), and *Morrison–Knudsen Co. v. State Tax Commission,* 242 Iowa 33, 44 N.W.2d 449 (1950), where we affirmed judgments of courts which accepted evidence of the illegality of a tax as part of the proof in a mandamus action based on section 445.60. Those cases, however, involved pure issues of law which could be decided on more-or-less undisputed factual situations and which did not encroach upon the administrative responsibilities of an agency designated by law to administer a particular statutory scheme.

The majority is incorrect in contending that the state may not impose a time bar on the assertion of claims for refund of property taxes collected, appropriated and expended in payment of the cost of government. Government does have a legitimate interest in assuring within reasonable limits that, when it acts on an expenditure, the necessary funds are available and not subject to loss through tax refunds. Some reasonable time limit on the filing of claims is a salutory devise in affecting this legitimate public interest.

It is no answer to say that more than seventy years ago in *Commercial National Bank v. Board of Supervisors,* 168 Iowa 501, 150 N.W. 704 (1915), we found no legal impediment which precluded retroactive relief to the taxpayer. The issue must be decided on the basis of the law in effect at the time that plaintiff made its claims for refund. If, at that time, there was in force a controlling statute or administrative regulation which requires denial of the claims as untimely, there is no legal cause for not applying it. *See Randall,* 709 F.2d at 269–70. The various county boards of supervisors were in no position to make

that determination, because the consideration of refund claims or protests is the province of another agency.

Even if it is assumed that plaintiff's claims for refund are not barred by some specific time limitation, there are issues of fact remaining to be resolved before such claims can ripen into liquidated amounts. The federal court decree in *Burlington N.R.R. v. Bair* only establishes that Iowa may not tax the personal property of railroads under a method which is substantially different and more detrimental than that applied to the personal property of other commercial taxpayers. Although valuation findings were involved in the federal court action, these are not controlling for according plaintiff retroactive relief under state law. The responsibility for making the required reevaluation of plaintiff's property on a basis comparable to other commercial taxpayers for the years 1979, 1980 and 1981 should be undertaken by the agency entrusted by law with the valuation of railroad assets.

Our statutes and administrative regulations provide for centralized collection of the taxes levied on railroad property. The responsibility for administering this scheme is conferred upon the Iowa Department of Revenue and Finance. *See* Iowa Code § 434.11 (1983); 701 Iowa Admin. Code 76.1–.9. The rules governing practice and procedure before the Iowa Department of Revenue and Finance specifically provide that their scope includes administration and enforcement of the property tax on railroads under Iowa Code chapter 434. 701 Iowa Admin.Code 7.2(9). These rules provide both informal and formal procedures under which the plaintiff could have presented its refund claims to the agency entrusted by law with a centralized collection of railroad property tax revenues.

Permitting plaintiff to avoid the established administrative machinery for determining its refund claims not only permits necessary valuation decisions to be made de novo by agencies other than those which are assigned that responsibility by law, it also has resulted in the wrong entities defending against the claims in this litigation.

Although counties are recipients of the resulting revenues, they have no responsibility in the collection process. Local boards of supervisors, although subject to possible adverse fiscal consequences from the refund claims, are clearly not the proper bodies to make policy decisions on how litigation involving centralized state taxation should be handled.

For all of the reasons discussed, I believe the district court was correct in its determination that at the time demand for refund was made upon the various boards of supervisors there were no liquidated sums to which plaintiff was entitled. This relieved the boards of supervisors from any necessity for acting on plaintiff's demands. The mandamus action was therefore properly dismissed. I would affirm the district court's order.

SCHULTZ and NEUMAN, JJ., join this dissent.