542 P.2d 56

**HALLIBURTON COMPANY, Petitioner-Appellant,**

**v.**

**PROPERTY APPRAISAL DEPARTMENT, State of New Mexico, Respondent-Appellee.**

**No. 1792.**

Court of Appeals of New Mexico.

Oct. 21, 1975.

OPINION

WOOD, Chief Judge.

The PAD (Property Appraisal Department—See § 72-25-3, N.M.S.A.1953 (Repl. Vol. 10, pt. 2, Supp.1973)) valued, for property tax purposes, certain tangible personal property of the Halliburton Services Division and Welex Division of taxpayer, Halliburton (Halliburton Company). Halliburton protested the notices of value; the director of the PAD denied the protest after a hearing; the taxpayer appeals directly to this Court. Sections 72-25-10, 72-25-11, 72-25-12, N.M.S.A.1953 (Repl. Vol. 10, pt. 2, Supp.1973). Three of the issues are dispositive. They are: (1) PAD's jurisdiction to value the property, (2) exemption of vehicle mounted equipment from property taxation, and (3) exemption of sales inventories from property taxation.

*PAD's Jurisdiction*

Section 72-6-4(A)(1)(c), N.M.S.A.1953 (Repl. Vol. 10, pt. 2, Supp.1973) is the applicable statute. It provides for the PAD to determine the assessed value:

> "of the machinery, equipment and other personal property in this state of all resident or nonresident contractors customarily engaged in contracting business which involves the movement and use of such machinery and equipment in more than one [1] county in the state, when such contractors, in the usual course of business, engage in work involving the use of, but not limited to, machinery and equipment commonly used in highway construction and maintenance, industrial building construction, engineering construction, pipeline construction, steel construction, utilities construction, and oil and gas well drilling."

Halliburton does not contend that it is not a contractor. It asserts that to be a contractor within the meaning of the statute the contractor must be involved in constructing one of the items named in the statute. It argues that it does not drill oil or gas wells but only provides services for those wells. This contention is based on a

Joe R. G. Fulcher, Modrall, Sperling, Roehl, Harris & Sisk, John B. Tittmann, James P. Saunders, Jr., Keleher & Mc-Leod, Albuquerque, for petitioner-appellant.

Toney Anaya, Atty. Gen., John C. Cook, Joseph T. Sprague, Property Tax Dept., Asst. Attys. Gen., Santa Fe, for respondent-appellee.

misreading of the statute. The contractor's work must involve the use of, but is not limited to, machinery and equipment commonly used in oil and gas well drilling. The statute, by its terms, does not require Halliburton Company to be the drilling contractor.

■ There is evidence that the Halliburton Services Division cements surface casing to the depth required by state regulatory agencies, performs drill stem tests to help determine whether the well can be productive, cements the production casing and stimulates production either by fracturing or acidizing. There is evidence that Welex Division performs various logging services which are used in determining whether production casing should be set. The logging services are performed after reaching "total depth" of the well. Welex also perforates the casing at the production level of the well.

All of the foregoing activities are performed prior to production from the well. These activities are performed in the usual course of business; the activities involve the use of machinery and equipment, and this machinery and equipment is commonly used in the course of drilling an oil and gas well.

Although there is conflicting evidence, it was for the director to choose between conflicting inferences. *Rust Tractor Co. v. Bureau of Revenue*, 82 N.M. 82, 475 P.2d 779 (Ct.App.1970). There being substantial evidence that Halliburton's activities came within § 72–6–4(A)(1)(c), supra, the decision of the director that Halliburton was within PAD's jurisdiction is affirmed. *United Veterans Org. v. New Mexico Prop. App. Dept.*, 84 N.M. 114, 500 P.2d 199 (Ct.App.1972).

*Exemption of Vehicle Mounted Equipment*

■ Included within the value determined by the PAD for property taxation purposes was the value of "vehicle mounted machinery and equipment" used in performing the activities previously described in this opinion. The contention is that this machinery and equipment should not have been valued for tax purposes because it is exempt from taxation under § 64–11–14, N.M.S.A.1953 (2d Repl. Vol. 9, pt. 2, Supp.1973) and § 72–1–23, N.M.S.A.1953 (Repl. Vol. 10, pt. 2, Supp.1973).

Section 64–11–14, supra, states:

"No vehicle upon which the registration fees provided for in the Motor Vehicle Code have been paid shall be assessed or taxed upon any property assessment rolls in this state for the period for which the fees are paid * * *."

Section 72–1–23, supra, states:

"Motor vehicles registered under the provisions of the Motor Vehicle Code are exempt from property taxation except for mobile homes as defined in section 64–1–8 NMSA 1953."

Halliburton purchases vehicular equipment produced by the manufacturer to Halliburton's specifications. This equipment is delivered to Halliburton in Duncan, Oklahoma. Halliburton then adds the specialized equipment necessary to perform the operations previously referred to in this opinion. The specialized equipment is bolted to the frame of the vehicle's chassis and, according to the evidence, is permanently mounted. The completed vehicle is then delivered to various locations of Halliburton. When delivered to a Halliburton location in New Mexico the vehicle is registered in New Mexico and registration fees are paid.

In denying Halliburton's claim of exemption, the director ruled that none of the property in question was a motor vehicle as that term is defined in the Motor Vehicle Code. The "property in question" is not the cab and chassis of the trucks or the chassis of the trailers; the disagreement is over the equipment mounted on the chassis.

Defending the director's ruling, PAD asserts the equipment was special mobile equipment which was not subject to registration under § 64–3–2, N.M.S.A.1953 (2d Repl. Vol. 9, pt. 2). Special mobile equip-

ment is defined in § 64–1–12, N.M.S.A.1953 (2d Repl. Vol. 9, pt. 2). *Gibbons & Reed Company v. Bureau of Revenue,* 80 N.M. 462, 457 P.2d 710 (1969). This definition reads in part: "Every vehicle not designed or used primarily for the transportation of persons or property and incidentally operated or moved over the highways * * *."

The evidence is undisputed that the equipment in question is added to the chassis for the purpose of carrying that equipment to and from drilling sites over the highways. "Incidental" means subordinate, nonessential, as occurring merely by chance or without intention or calculation. Webster's Third New International Dictionary (1966). The evidence is that the equipment was not incidentally moved over the highways; the equipment is not special mobile equipment under § 64–1–12, supra.

■ PAD contends the equipment mounted on the chassis is not part of the vehicle and therefore not part of a motor vehicle entitled to the exemption. PAD would distinguish between the part of a vehicle necessary for its propulsion and the part unnecessary for propulsion. It states that "vehicle", as used in our statute "is not intended to include property * * * which is unnecessary to the function of the device in transporting or drawing the property upon a highway." This contention finds no support in the statutory definitions of "vehicle" and "motor vehicle". The definition of these terms in § 64–1–6, N.M.S.A.1953 (2d Repl. Vol. 9, pt. 2) does not distinguish between the propulsion and non-propulsion parts of a vehicle.

According to the certificates of registration in evidence, the equipment is mounted either on trucks or freight trailers. We need not determine whether the equipment mounted on the trucks was a part of the trucks for purposes of vehicle registration fees. The registration fees for trucks are determined by declared gross weight. Declared gross weight is defined to include maximum gross vehicle weight "at which a vehicle * * * will be operated during the registration period, as declared by the registrant for registration and fee purposes * * *." Sections 64–11–2 and 64–1–8.1, N.M.S.A.1953 (2d Repl. Vol. 9, pt. 2, Supp.1973). The evidence is undisputed that a gross weight was declared by Halliburton, that the declared gross weight included the mounted equipment and that registration fees were paid on that gross weight. Having paid the registration fees as provided in the Motor Vehicle Code, the equipment mounted on the trucks was exempt from property tax under § 64–11–14, supra.

■ The registration fee provisions for freight trailers differ from the provisions for trucks. Section 64–11–2, supra, provides for a permanent registration fee "irrespective of their weight". Accordingly we must determine whether the equipment mounted on the trailers is a part of the trailers. If so, once the permanent registration fee is paid, the trailer, including the equipment which is a part of the trailer, is exempt under § 64–11–14, supra. Although the equipment is bolted to the trailer, the evidence is that the trailer had no use apart from the equipment, that the equipment is an integral part of the trailer, that the trailer and equipment constitute a single unit and is used as such. See *Crown Concrete Company v. Conkling,* 247 Iowa 609, 75 N.W.2d 351 (1956). The evidence in this case shows the equipment was a part of the trailer.

The director erred in denying the exemption.

*Exemption of Sales Inventories*

Section 72–1–22, N.M.S.A.1953 (Repl. Vol. 10, pt. 2, Supp.1973) states:

"Personal property in the possession of a person, whether owned by him or not, and held as part of his inventory for sale or resale at wholesale, retail or on consignment is exempt from property taxation except for:

* * * * * *

"B. personal property inventories held by a person whose property used in con-

nection with the maintenance of personal property inventories is subject to assessment by the property appraisal department."

This statute was recompiled as § 72–29–3.2, N.M.S.A.1953 (Int.Supp.1974) by Laws 1974, ch. 92, § 35.

Halliburton possesses sales inventories. The PAD valued these inventories for property tax purposes. Halliburton protested; the director overruled the protest. The director ruled that Halliburton came within the exception to the exemption and that the exception did not deprive Halliburton of equal protection of the law.

Two requirements must be met before the exception applies. First, Halliburton must have been subject to assessment by PAD. We held Halliburton was subject to assessment by PAD in the first issue of this opinion. Second, Halliburton must have property which is "used in connection with the maintenance of personal property inventories." Halliburton attacks the sufficiency of the evidence to meet this requirement. Although the evidence on this issue is sparse, we assume, but do not decide, that the evidence is sufficient. We do so because of the equal protection issue.

Section 72–1–22, supra, provides a general exemption from property taxation of sales inventories. The exception would take the exemption away from Halliburton because Halliburton's sales inventories are subject to assessment by PAD. Halliburton is subject to assessment by PAD because it is "customarily engaged in contracting business which involves the movement and use of * * * machinery and equipment in more than one [1] county in the state * * *." Section 72–6–4(A)(1)(c), supra.

The effect of § 72–1–22, supra, and § 72–6–4(A)(1)(c), supra, is that contractors whose machinery and equipment is used in more than one county are subject to property tax on sales inventories and contractors whose machinery and equipment is *not* used in more than one county are not subject to property tax on sales inventories.

The equal protection issue is whether there is a rational and natural basis for distinguishing between contractors whose machinery and equipment is used in more than one county and contractors whose machinery and equipment is not used in more than one county. Stated another way, is there a substantial difference between contractors operating in more than one county and contractors who do not? *Gruschus v. Bureau of Revenue,* 74 N.M. 775, 399 P.2d 105 (1965).

In considering the equal protection issue we recognize the Legislature possesses great freedom in classifications in the tax field, that Halliburton has the burden of negating every conceivable basis which might support the classification and that unless the classification is clearly arbitrary and capricious we cannot hold the classification unconstitutional. *Michael J. Maloof & Co. v. Bureau of Revenue,* 80 N.M. 485, 458 P.2d 89 (1969).

Halliburton asserts a classification based solely on the use of machinery and equipment in more than one county is patently unreasonable. PAD asserts the classification has a reasonable basis because "imposition of tax on the inventories of the contractors referred to in Section 72–6–4(A)(1)(c), *supra,* is susceptible to better procedure in order to obtain uniformity and equality in the valuation and assessment of property throughout the state than is imposition of tax on inventories by the county assessor." Thus PAD defends a classification for tax purposes on the basis of assessment procedures. This does no more than show administrative convenience in arriving at a valuation of the property involved; it does not show a rational basis for taxing inventories of contractors who report value to PAD rather than to the county assessor. Specifically the fact that taxpayers may reasonably be required to report their property values to different government offices because of differences in geographic operations does not provide a reasonable basis for a difference in tax treatment on the values reported.

PAD also asserts the difference in tax treatment of single county and multi-county contractors is similar to a difference in tax treatment of professional fees and wages. We do not understand this contention. The tax involved here does not distinguish between type of work or type of payment for work performed; the difference in tax treatment applies solely because a contractor crosses a county line.

At oral argument the suggestion was made that the difference in tax treatment is based on a difference in "size" of contractors, that a single county contractor would do less business than a multi-county contractor. "Size" is used in the sense of the dollar volume of the contractor, and dollar volume could refer to various items such as gross receipts or value of sales inventories. The argument is spurious. The tax difference with which we are concerned is based solely on whether the contractor crosses a county line in doing business; the statutes which establish the difference in tax treatment are not concerned with "size" of the contractor. Compare *Gruschus v. Bureau of Revenue,* supra.

No conceivable basis has been advanced why a contractor operating in San Juan and Rio Arriba Counties should have its sales inventory subject to the property tax and a contractor who operates only in San Juan County should be exempt from that tax. Compare *State v. Sunset Ditch Co.,* 48 N.M. 17, 145 P.2d 219 (1944).

The difference in tax treatment based solely on whether a contractor uses his equipment in more than one county is arbitrary and results in a denial of equal protection of the law. This difference comes about because of the exception from the exemption in § 72–1–22, supra. Under that statute Halliburton's sales inventories were subject to property tax because their property was valued by PAD rather than the county assessor. To the extent that valuation by the PAD deprives Halliburton of the exemption, § 72–1–22, supra, is unconstitutional.

The director erred in ruling that taxation of Halliburton's sales inventory was not barred by the equal protection requirements of the Constitution.

The director's decision and order is set aside. The cause is remanded with instructions to give appropriate notices of this result. Section 72–25–12, N.M.S.A. 1953 (Repl. Vol. 10, pt. 2, Supp.1973).

It is so ordered.

HERNANDEZ and LOPEZ, JJ., concur.