628 P.2d 687

**KAISER STEEL CORPORATION,**
Appellant,

v.

**REVENUE DIVISION, TAXATION AND
REVENUE DEPARTMENT, State of
New Mexico, Appellee.**

No. 4495.

Court of Appeals of New Mexico.

March 31, 1981.

Certiorari Denied May 6, 1981.

Irwin S. Moise, Norman S. Thayer, Sutin, Thayer & Browne, Albuquerque, for appellant.

Jeff Bingaman, Atty. Gen., Edward F. Barnicle, Jr., Richard M. Kopel, Asst. Attys. Gen., Santa Fe, for appellee.

## OPINION

ANDREWS, Judge.

This appeal brought pursuant to the Tax Administration Act [§ 7–1–1 et seq., N.M.S.A.1978], involves a question of the applicability of the compensating tax deduction authorized by § 7–9–77, N.M.S.A.1978.

Kaiser Steel Corporation (Kaiser) operates a coal mine in Colfax County, New Mexico, for which it acquired certain pieces of mining equipment, including a "dragline" and "continuous miner," the taxable value of which is the subject of this appeal. At the time of the purchase Kaiser paid compensating tax on the full value of the two pieces of equipment. Some time later, Kaiser reduced the amounts of values of other property upon which it was liable for compensating tax by an amount it calculated as the sum it asserted it might have claimed as a deduction pursuant to § 7–9–77 at the time it originally acquired the dragline and continuous miner. Thereafter, the Revenue Division of the Taxation and Revenue Department (Department) assessed Kaiser for the compensating tax deducted by it. Kaiser filed a protest which, together with a "request for refund" was heard at a formal administrative hearing. Kaiser appeals from the Decision and Order entered pursuant to the hearing where the Revenue Division Director (Director) deter-

mined that the fifty percent deduction provided in § 7–9–77 does not apply to the dragline and continuous miner and accordingly denied Kaiser's request for refund and affirmed the assessment.

Section 7–9–77(A) provides that "[f]ifty percent of the value of agricultural implements, farm tractors, aircraft or vehicles that are not required to be registered under the Motor Vehicle Code may be deducted from the value in computing the compensating tax due." In an apparent attempt to further define the types of vehicles which are within the general terms of the section, the Director adopted G.R. Regulation 14.–17:4, which declares the following "mining equipment" to be "vehicles" not required to be registered:

Shuttle cars are self-contained mobile mining machines mounted on rubber tire wheels, used to transport broken ore from the ore face in the mine to a loading point, where the ore is loaded into an underground train.

Undercutting machines are self-contained mobile mining machines mounted on rubber tire wheels. These machines are used to undercut or bottom cut the ore face prior to drilling.

Mining drills are self-contained mobile mining machines mounted on rubber tire wheels used to drill holes above the undercut prior to shooting.

Loading machines are self-contained mobile mining machines mounted on tractor treads and are similar to front end loaders. They are used to load ore into shuttle cars.

Electric shovels are self-contained mobile mining machines mounted on tractor treads and are used in open pit mining operations to load ore and waste material into dump trucks.

Kaiser, in seeking to have the deduction applied to the purchase of the dragline and continuous miner, asserts that: (1) the two pieces of equipment are "vehicles," exempt from registration under the Motor Vehicle Code; or, (2) the regulation as interpreted by the Director brings about an arbitrary and capricious result in violation of Kaiser's

rights; and (3) the regulation discriminates against Kaiser because the regulation grants the deduction on machines similar to Kaiser's while denying Kaiser the deduction on its equipment.

Initially, we address a jurisdictional issue. The Tax Administration Act specifically defines the procedures by which a taxpayer can call into question his liability for any tax or the application to him of any provision of the Act. The Act requires that a taxpayer elect to dispute his liability for the payment of taxes either by protesting the assessment without making payment or by claiming a refund after making payment. § 7–1–23. If the taxpayer protests without making payments he is entitled to an administrative hearing before the Director. § 7–1–24, but if he claims a refund he is entitled to file a civil action in district court. § 7–1–26. In the first instance, if the taxpayer is dissatisfied with the action and order of the Director after a hearing, he may appeal to the Court of Appeals for further relief, § 7–1–25, and where the matter is in district court, either the taxpayer or Director may appeal to the Court of Appeals. § 7–1–26(A)(2).

Kaiser has not strictly followed either of these methods in its attempt to obtain tax relief. It first pursued the tax refund. On December 31, 1974, Kaiser wrote to the Bureau of Revenue regarding the "sales tax exemption" on mining equipment. The Bureau's position was that the tax was applicable. On December 12, 1977, Kaiser wrote a letter constituting a claim for refund on the compensating tax. This claim was within the three-year period of limitations provided in § 7–1–26(B), N.M.S.A.1978. Had the claim been granted, it would have had the effect of approving the refund already taken by Kaiser. The claim for refund of compensating tax was denied on February 14, 1978. Kaiser did not commence a civil action in district court within thirty days of the denial, as provided in § 7–1–26(A)(2). On November 5, 1979, the Division issued a Notice of Assessment of taxes for the compensating tax. Kaiser filed protest of the assessment on Novem-

ber 19, 1979, within the thirty-day period of § 7–1–24(B). On December 17, 1979, a hearing on the protest was held by the Department. At the hearing, the Department's attorney stated, "[t]he claim for refund and assessment is what is before Your Honor, claim for refund as it applies to compensating tax only." The Director's Decision and Order was entered on January 11, 1980, and Kaiser's complaint on appeal to this Court was filed on February 8, 1980. The appeal was thus timely filed under § 7–1–25(A).

■ At no time prior to this appeal did the Division assert that Kaiser had failed to properly pursue its remedies under the Tax Administration Act. The Division did not raise an issue relating to waiver of remedies by Kaiser under § 7–1–23 at the administrative hearing. A party will not be permitted to change his theory of the case on appeal; this principle applies on review by courts of administrative determinations so as to preclude from consideration questions or issues which were not raised in the administrative proceedings. *Board of Education v. State Board of Education*, 79 N.M. 332, 443 P.2d 502 (Ct.App.1968); *see Till v. Jones*, 83 N.M. 743, 497 P.2d 745 (Ct.App. 1972). The Department's actions constitute a waiver of its right to present the issue, *see Stuckey's Stores, Inc. v. O'Cheskey*, 93 N.M. 312, 600 P.2d 258 (1979), so the issue is not before this Court for review.

■ This is an appeal from the Director's Decision and Order as authorized by § 7–1–25, where the taxpayer is dissatisfied with the action and order of the Director. Accordingly, this Court has jurisdiction. It does not matter whether the legal issues are deemed to arise out of a claim for refund, or out of the protest of the subsequent assessment. Kaiser is entitled to one review and the questions are the same. Upon appeal, this Court shall set aside a Decision and Order of the Director only if found to be: (1) arbitrary, capricious or an abuse of discretion; (2) not supported by substantial evidence in the record; or (3) otherwise not in accordance with law. § 7–1–25(D). Our review of this case is so restricted; it does not include the jurisdictional question, which the Director could and should have addressed in his Decision and Order. *See Floyd & Berry Davis Co. v. Bureau of Revenue*, 88 N.M. 576, 544 P.2d 291 (Ct.App. 1975).

■ According to Kaiser, the Director erred in deciding that the deduction provided in § 7–9–77 was not applicable in connection with the purchase of the dragline and continuous miner since the machines are "vehicles" as defined in § 66–1–4(B)(71), which are not required to be registered under the Motor Vehicle Code because: (1) neither is a "motor vehicle" as defined in § 66–1–4(B)(39); (2) neither is a trailer, semi-trailer, or pole trailer required to be registered as provided in § 66–3–1; (3) neither is driven or moved upon a highway so as to be subject to registration and certificate of title provisions of the Motor Vehicle Code, § 66–3–1; (4) the provisions of § 66–3–1(B) apply in that the machines are "driven or moved upon a highway, only for purposes of crossing from one property to another;" and, (5) they are "special mobile equipment" as defined in § 66–1–4(B)(60).

Kaiser asserts that the Director's findings do not support the conclusion that § 7–9–77 is not applicable to the dragline and continuous miner; consequently, the order is not supported by substantial evidence and is not in accordance with applicable law. *See Union County Feedlot, Inc. v. Vigil*, 79 N.M. 684, 448 P.2d 485 (Ct.App.1968). In analyzing this argument it appears that the ultimate question to be answered is whether the dragline and continuous miner are "vehicles not required to be registered under the Motor Vehicle Code." In order to make this determination the first issue to be addressed is whether the two pieces of equipment are "vehicles."

The Decision and Order describe the two pieces of machinery as follows:

The dragline is a huge machine powered by outside sources—electricity furnished by trailing electrical cables carrying 6,900 volts. It is equipped with a long boom with cable hoists to operate a

suspended 35 cubic yard bucket for digging and casting overburden. It is 21 stories high and weighs 4 million pounds. The dragline has a tub-type turntable and large "walking shoes" mounted as outriggers on the sides. Each shoe is about 49 feet long and 10 feet wide. The cab, machinery house and boom, rotate on the tub by means of rollers and drive gears to permit the boom to be positioned over the overburden to be moved. The bucket is lowered to the overburden and pulled forward into the overburden by a drag hoist until the bucket is loaded. The bucket is then hoisted, the machine rotates to position the bucket over the spoil pile and the bucket tripped to dump the overburden clear of the area being stripped. The overburden can be moved up to 500 feet by rotating the machine 180 degrees between digging and dumping. The dragline moves by lowering the walking shoes to the ground, by means of an eccentric drive, then raising the machine (except the shoes); then the elevated machine is moved horizontally about six feet. After this move, the machine is set back down on the ground, the shoes are elevated, moved and lowered again. This motion is repeated. The shoes do not move horizontally on the ground. The machine normally digs material at or below the level of the tub and can dump in piles 135 feet above the tub level. This permits removing the overburden from the coal seam in approximately 120 feet wide benches and casting the overburden to one side to allow access to the coal.

The continuous miner is a mobile coal cutting and loading machine on caterpillar type treads. This machine is used for mining coal in underground entries and pillars. The machine advances to the coal face on caterpillar type tractor treads and by means of a rotating cutting drum, equipped with pointed bits, cuts coal from the solid face by raising and lowering the rotating cutting drum as the machine advances. Loosened coal is scooped at the front and conveyed to the rear of the machine where the coal is dumped. The cutting drum is arranged to cut a greater width than the machine body width so the machine can be advanced into the cut. After mining a cut or pillar the machine moves to another entry or pillar and repeats the mining cycle. It is powered by electricity furnished by a trailing 440 volt cable which is connected to an in-mine transformer. The machine is between 8–9 feet wide, 32 feet long, 3½ high and weighs between 30 and 40 tons.

Kaiser finds no fault with the Director's description of both machines, but argues that additional facts as to them were adduced at the hearing. The operator "rides" in the cab of each machine, and both machines are powered by electric power by necessity. The continuous miner, being a machine used underground is powered by electricity for safety reasons, and draglines the size of the one in question here, although used above ground, are "always" powered by electricity brought to the machine by a trailing cable.

Section 66–1–4(B)(71), N.M.S.A.1978, of the Motor Vehicle Code defines "vehicle" as "every device in, upon or by which, any person or property is or may be transported or drawn upon a highway, including any frame, chassis or body of any vehicle or motor vehicle, except devices moved by human power or used exclusively upon stationary rails or tracks."

The Director made the following findings and conclusions in regard to this definition:

11. There is no evidence that either of the two machines "is" used to transport any person or property upon a highway. Each machine moves or transports property off the highway; the bucket on the dragline moves soil through the air and the continuous miner moves coal in coal mines by means of a built-in conveyer. One machine, the dragline crossed a paved road once (and it depressed the road by about six inches). Nor is there any evidence that either machine is "drawn" upon highway.

12. May either machine transport persons or property upon a highway? Transport means to move something or someone from one place to another. And in

moving itself, a machine is not transporting property within the meaning of § 66–1–4(71). See *State v. Griswold*, 225 Iowa 237, 280 N.W. 489 (1938).

13. To be a "vehicle" within the meaning of § 7–9–77, the machine must be capable of being utilized as a means of carrying people or other property over the highways. Neither of these machines can be so used. Neither of these machines are vehicles as defined in § 66–1–4(71), and neither are "vehicles that are not required to be registered" within the meaning of § 7–9–77.

According to Kaiser, when the definition of "vehicle" in § 66–1–4(B)(71), is analyzed, it is clear that both the dragline and continuous miner fall into the definition and are, therefore, "vehicles" subject to the deduction authorized in § 7–9–77. As noted by Kaiser, the "dragline" and "continuous miner" are each a "device" or a "piece of equipment or a mechanism designed to serve a special purpose or perform a special function." Webster's Third Int. Dictionary 618 (1961); *see Illinois Bell Telephone Company v. Miner*, 11 Ill.App.2d 44, 136 N.E.2d 1 (1956). Relying then on the Director's findings that each machine "moves" or is "mobile," Kaiser asserts that "although not included in the Director's findings, it is uncontroverted that both machines are capable of moving persons or property on the highway and are self-contained except that operate with a trailing cable which conveys electricity to them from an outside source," and each piece of equipment is therefore a device upon which a person or property may be transported upon a highway. However, in attempting to show that these two pieces of equipment are "vehicles," under the definition set out in § 66–1–4(B)(71), Kaiser relies upon two premises not established in the record; first, that both machines are "capable of" moving persons or property "upon the highway," and second, that the machines are "self-contained."

As to the first premise, the description of the dragline and continuous miner adopted by the Director establish that they do not come within the general "descriptive terms" of § 66–1–4(B)(71). Although the dragline crossed a paved road, there is no evidence in the record that the continuous miner ever made this trek. The mere fact that a machine once crossed a paved road is clearly not the same as it being a machine which "moves on a highway." The highway was a mere impediment—one which was severely damaged by the visitation. *Accord Standard Oil Co. of California v. Philbrick*, 47 Cal.App.2d 591, 118 P.2d 497 (1941). As to whether the pieces of equipment are "self-contained," the issue is whether a device which operates from a trailing cable which conveys electricity to it from an outside source is "self-propelled," as required by § 66–1–4(B)(39), defining "motor vehicle" as "every vehicle which is self-propelled and every vehicle which is propelled by electric power obtained from batteries or from overhead trolley wires, but not operated upon rails." "Self-propelled" means "propelled by its own motor" or "fuel." Webster's Third Int. Dictionary 2061 (1961). Clearly, where a mechanical device is not so powered, but instead receives its power through a trailing cable which conveys electricity to it from an outside source, the "device" is not "self-propelled." *See Halliburton Company v. Property Appraisal Dept.*, 88 N.M. 476, 542 P.2d 56 (Ct.App. 1975). From all the foregoing, we find it impossible to conclude that the continuous miner and dragline are "vehicles" under the Motor Vehicle Code. *Accord Gibbons & Reed Company v. Bureau of Revenue*, 80 N.M. 462, 457 P.2d 710 (1969).

Kaiser asserts that, even if we so conclude we must, nevertheless, determine whether the dragline and continuous miner are "vehicles not required to be registered under the code," for which Kaiser would be entitled to the deduction authorized by § 7–9–77; the argument being that § 7–9–77 creates a separate class of "vehicles" which are not included in other definitions. Section 66–3–1 subjects every "motor vehicle, trailer, semitrailer and pole trailer, when driven or moved upon a highway," to the registration provisions of the Motor Vehicle Code. However, certain exceptions to this requirement are listed in the section and include:

B. any such vehicle which is driven or moved upon a highway only for the purpose of crossing such highway from one property to another;

\* \* \* \* \* \*

D. any special mobile equipment . . . .

According to Kaiser, the dragline and continuous miner fit into these exceptions because they are driven or moved on the highway only to cross from one property to another, and are "special mobile equipment" as that term is defined in § 66–1–4(B)(60).

Because the machine must, in the first instance, be a "vehicle" in order to qualify under either exception, *see Gibbons & Reed Company v. Bureau of Revenue, supra,* and, as shown above, neither the dragline nor continuous miner can be so classified, under § 66–1–4(B)(71), neither are "vehicles not required to be registered" within the meaning of § 7–9–77. Further, as to the requirements of § 66–3–1(B), a finding that a machine "moves" or is "mobile" does not in itself support a conclusion that the machine can be "driven or moved upon a highway" for any purpose. In fact, the evidence here is to the contrary.

Although defining the term "special mobile equipment" as "every vehicle not designed or used primarily for the transportation of persons or property and incidentally operated or moved over the highways, including farm tractors, road construction or maintenance machinery, ditch digging apparatus, well-boring apparatus and concrete mixers," § 66–1–4(B)(60) also declares the "enumeration" above to be "partial" and states that it "shall not operate to exclude other such vehicles which are within the general terms of [the] section."[1] Because the dragline and continuous miner are similar to some of the equipment enumerated in the section, Kaiser would have the "partial" enumeration expanded to include its equipment. While we would agree that the

equipment is not "used primarily for the transportation of persons or property," the machines do not meet the other criteria of the section. First, the machines are not "vehicles." Second, neither the dragline nor continuous miner are "incidentally operated or moved over the highways." We are unable to conclude that either the dragline or continuous miner come within the general descriptive terms of § 66–1–4(B)(60). The Director's Decision and Order is amply supported by the record. Neither the dragline or continuous miner are "vehicles" exempt from registration under the Motor Vehicle Code.

We turn then to Kaiser's final two contentions—that the regulation creates an irrational classification which violates due process and equal protection rights. Kaiser does not contend that the legislature may not classify for taxing purposes, or that § 7–9–77 is defective or unconstitutional. Rather, it argues that G.R. Regulation 14.-17:4, as applied by the Director is so "whimsical, arbitrary and capricious as to make the attempted application unreasonable and illegal."

The Decision and Order states that:

"Regulation 14.7:4 is presumed to be in proper implementation of the law. Section 7–1–5(G). So the question is not the validity of the regulation (although some might question it); rather the question is the applicability of the regulation to the two machines in question. The regulation does not state a general rule as to what is a vehicle within the meaning of § 7–9–77. It simply lists certain equipment which, it says, meets the vehicle test. The two machines in question are not listed in the regulation (although they may be similar to the listed machines in some particulars). So, the regulation does not directly apply to the dragline and the continuous miner. Moreover, it

---

1. A similar case was presented in *Gibbons & Reed Company v. Bureau of Revenue,* 80 N.M. 462, 457 P.2d 710 (1969), which held that a piece of mining equipment called a "mole" was not "special mobile equipment" because it did not come within the general descriptive terms

of the section. [§ 64–1–12, N.M.S.A.1953 Comp., now § 66–1–4(B)(60), N.M.S.A.]. The "mole" which weighed approximately one hundred tons, was used to move employees and supplies in and out of a tunnel and to remove excavated material from the tunnel.

should be noted that each of the machines listed in the regulation is described as "self-contained." Although, "self-contained" is not defined in the regulation, the words cannot be ignored. As used in the regulation, self-contained means self-propelled. The two machines involved in this hearing are powered by external electrical sources; they are not self-contained and they are not of the type listed in the regulation. Accordingly, the Taxpayer cannot rely on the regulation to support its position.

Kaiser considers this holding to misconstrue its position in regard to this case because its reference to the regulation was for the purpose of demonstrating that the machines covered by the regulation are similar to the dragline and continuous miner. The "electric shovel" is used for the identical purpose as the dragline, differing only in that it is smaller and in its method of operating the bucket. Both items of equipment are mobile; both perform their functions as a discrete unit of machinery; both have their own motors mounted on board; both are operated with trailing cables. As concerns the continuous miner, it performs the same operations as an undercutting machine, mining drill and loading machine, plus "additional services."

According to Kaiser, if the characteristics not required by the Motor Vehicle Code definition of "vehicle," § 66–1–4(B)(71), were eliminated from the regulation, there would be no basis upon which the dragline and continuous miner could be distinguished from other mining equipment listed in the regulation. The statute makes no mention of the requirement that the machines be "self-contained," "rubber-tired" or "mounted on tractor treads." Kaiser questions the "total absence of reason for [the] differences" treatment between the various pieces of equipment and asserts that a tax rate based on these distinctions is discriminatory. Kaiser's position is that there is no reasonable basis upon which an electric

shovel described in G.R. Regulation 14.7:4 can be distinguished from the electric dragline here involved, and that similarly, mining drills, undercutting machines and loading machines cannot be distinguished from the continuous miner; thus, the tax imposed cannot be equal and uniform on these similar or comparable items, and accordingly cannot be sustained. N.M.Const. Art. II, § 18, U.S.Const. Amend. XIV, § 1.

■ In approaching the question of the constitutionality of a statute, every presumption is to be indulged in favor of the validity and regularity of the legislative enactment. *Gruschus v. Bureau of Revenue*, 74 N.M. 775, 399 P.2d 105 (1965). We are under no duty to inquire into the wisdom, the policy, or the justness of an act of the legislature, but must resolve all doubts as to its constitutionality in favor of the validity of the law. *Gruschus v. Bureau of Revenue, id.; State ex rel. Hannah v. Armijo*, 38 N.M. 73, 28 P.2d 511 (1933). It is well-established that in the exercise of its taxing power, the State may select its subjects of taxation, and, so long as the tax is equal and uniform on all subjects of a class and the classifications for taxation are reasonable, such legislation does not offend these provisions of the state and federal constitutions. *Gruschus v. Bureau of Revenue, supra; Lougee v. New Mexico Bureau of Revenue Commissioner*, 42 N.M. 115, 76 P.2d 6 (1938).

■ When a statute or regulation, as applied, discriminates as between taxpayers, that discrimination must rest on some rational basis. We agree then with Kaiser, that there is discrimination in the treatment of the dragline and continuous miner as compared to the other mining equipment listed in the G.R. Regulation 14.17:4. However, it is clearly the burden of the taxpayer at the time of the hearing to "negative every conceivable basis which might support the discriminatory classification.[2] *Markham Advertising Co. v. Bureau of*

---

**2.** This principle lies in taxation perhaps as in no other area of law, because of the implied rational basis underlying every tax statute, that the State has the right, power, and duty to raise

the necessary funds for its public purposes. *Markham Advertising Co. v. Bureau of Revenue*, 88 N.M. 176, 538 P.2d 1198 (Ct.App.1975).

*Revenue*, 88 N.M. 176, 538 P.2d 1198 (Ct. App.1975); *Michael J. Maloof & Co. v. Bureau of Revenue*, 80 N.M. 485, 458 P.2d 89 (1969).

 In this case, Kaiser did not "negative every conceivable basis which might support the discriminatory classification"[3] where the "only question to be asked is whether the machines in question are vehicles not required to be registered under the Motor Vehicle Code as special mobile equipment." As shown above, Kaiser failed to prove that either the dragline or continuous miner are "vehicles" as defined in § 66–1–4(B)(71).

We hold that the taxpayer has not met its burden of proving the lack of a rational basis for this State to discriminate between the dragline and continuous miner and other mining equipment defined in its regulation, and that neither piece of equipment is "special mobile equipment" or a "vehicle not required to be registered" under the Motor Vehicle Code. As the penalty has been abated in this case, the Decision and Order of the Director as to the tax is affirmed.

IT IS SO ORDERED.

LOPEZ, J., concurs.

HERNANDEZ, Chief Judge (dissenting in part, concurring in part).

I agree with the opinion insofar as it holds that this Court has jurisdiction to consider the appeal. However, I disagree as to applicability of the compensating tax deduction to Kaiser's mining equipment.

Section 7–9–77 provides that a deduction from compensating tax may be taken for "[f]ifty percent of the value of agricultural implements, farm tractors, aircraft or vehicles that are not required to be registered under the Motor Vehicle Code * * *." Section 66–3–1 of the Motor Vehicle Code provides:

Every motor vehicle, trailer, semitrailer and pole trailer, when driven or moved upon a highway, shall be subject to the registration and certificate of title provisions of the Motor Vehicle Code except:

\* \* \* \* \* \*

B. any such vehicle which is driven or moved upon a highway only for the purpose of crossing such highway from one property to another;

\* \* \* \* \* \*

D. any special mobile equipment as herein defined * * *.

Kaiser contends that the dragline and continuous miner are covered by §§ 66–3–1(B) and 66–3–1(D). I agree.

The evidence clearly shows that this equipment would only be driven or moved upon a highway for the purpose of crossing that highway to another property. The dragline, as noted, once crossed a paved road and left six-inch depressions in its surface. The continuous miner has not been shown to have ever even crossed a paved road. Both pieces of equipment thus meet the requirements of § 66–3–1(B).

"Special mobile equipment" is defined as "every vehicle not designed or used primarily for the transportation of persons or property and incidentally operated or moved over the highways * * *." § 66–1–4(B)(60). The record shows that the equipment is not designed or used primarily for transportation of persons or property. The dragline and continuous miner are similar to the construction equipment listed in the partial enumeration of § 66–1–4(B)(60) in that respect; both pieces of equipment are lacking design features which allow such transportation. Kaiser's mining equipment is within the general terms of "special mobile equipment," according to the Motor Vehicle Code's defining subsection, regardless of whether the equipment is "self-contained" or not. The basis for finding a requirement

---

**3.** Were this an issue where the Director had applied varying rates or methods of evaluation to two similar draglines, this might not be so, but taxing a "4 million pound" mechanism differently than a much smaller and less complex electric shovel is not the same sort of issue. *See generally Ernest W. Hahn, Inc. v. County Assessor, Etc.*, 92 N.M. 609, 592 P.2d 965 (1978).

that special mobile equipment be "self-contained" is nowhere evident in the statute or GR Regulation 14.17:4. The mining equipment is similar in purpose and operation to other equipment listed in the statute and regulation, and meets the criteria of the Motor Vehicle Code as a vehicle not subject to registration.

The *Gibbons & Reed* case is not applicable, in my opinion, given the facts of this case. That case involved a piece of equipment which ran on "approximately 5.6 miles of two-parallel lines of 70-pound-railroad rail," and which was operated by "15-ton locomotives, operated either by electric batteries or diesel fuel." *Gibbons & Reed Co. v. Bureau of Revenue*, 80 N.M. 462, 464, 457 P.2d 710 (1969). In addition, the "mole" was used to transport people and property into the mine tunnels. Such equipment clearly does not fit within the general descriptive terms of "special mobile equipment," but Kaiser's equipment is not at all like the "mole" in *Gibbons*. The continuous miner operates on caterpillar treads, powered by an electric motor. It does not transport people or supplies. The dragline operates on "walking shoes" and is also powered by an electric motor. Both are similar in design, operation, and purpose to the "road construction or maintenance machinery" and "ditch-digging apparatus" mentioned in § 66–1–4(B)(60). Accordingly, I would hold that the Decision and Order is not supported by substantial evidence in the record and is not in accordance with law, so the compensating tax deduction is applicable to Kaiser's equipment.