779 P.2d 114

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Robert J. EDEN, Defendant–Appellant.**

**No. 10799.**

Court of Appeals of New Mexico.

May 9, 1989.

Certiorari Denied July 27, 1989.

Hal Stratton, Atty. Gen. and Margaret McLean, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Paul S. Wainwright and Lisa E. Jones, Robinson & Wainwright, P.A., Albuquerque, for defendant-appellant.

## OPINION

BIVINS, Chief Judge.

Defendant was convicted by a jury of one count of causing great bodily harm by vehicle and one count of operating a snowmobile recklessly. The charges arose out of an accident that took place on Forest Road 44 in the Jemez Mountains on January 11, 1987. While defendant was driving a snowmobile on the forest road, he hit a trailer attached to a pickup, sending his snowmobile airborne. When it landed, it struck a cross-country skier, resulting in serious, disfiguring injuries to the skier.

On appeal, defendant attacks the conviction for great bodily harm by vehicle, contending that a snowmobile is not a "motor vehicle" within the meaning of NMSA

1978, Section 66–1–4(B)(39) (Repl.Pamp. 1984). We agree with defendant and reverse his conviction for great bodily harm. In addition, we discuss and affirm the rulings of the trial court concerning (1) the application of SCRA 1986, 5–604 to the facts of this case; and (2) the admissibility of defendant's breath test results, which he contends are the fruit of an illegal arrest, or otherwise inadmissible. We also summarily dispose of defendant's double jeopardy claim. In view of our reversal of the felony conviction, we need not reach defendant's claim of error in denial of his motion to dismiss the grand jury indictment due to alleged improprieties. Misdemeanor charges do not require grand jury presentment. *See State v. Marrujo,* 79 N.M. 363, 443 P.2d 856 (1968). We affirm defendant's conviction for reckless driving of a snowmobile. While this case was pending on appeal, defendant filed a motion to exclude certain exhibits that were sent to this court but which were not admitted at trial. We grant that motion.

## A SNOWMOBILE IS NOT A MOTOR VEHICLE WITHIN THE MEANING OF THE MOTOR VEHICLE CODE

The grand jury indictment charged defendant, inter alia, with one count of causing great bodily injury to the victim by vehicle, while driving under the influence of intoxicating liquors or while driving recklessly or both. The jury acquitted defendant on the alternative count charging him with driving a motor vehicle under the influence, and also on a separate charge of operating a snowmobile while under the influence. It convicted him of the charge of causing great bodily injury while driving a snowmobile recklessly, in violation of NMSA 1978, Sections 66–8–101(B) and 66–8–113(A) (Repl.Pamp.1987).

The crime of great bodily injury by motor vehicle is defined as follows: "Great bodily injury by vehicle is the injuring of a human being, to the extent defined in Section 30–1–12 NMSA 1978, in the unlawful operation of a motor vehicle." § 66–8–101(B). This crime is part of the Motor Vehicle Code, NMSA 1978, Sections 66–1–1 through 66–8–140 (Repl.Pamp.1984,

Repl.Pamp.1987, Cum.Supp.1988, & Supp. 1988) (the Code). The Code defines the term "motor vehicle" as follows: " '[M]otor vehicle' means every vehicle which is self-propelled and every vehicle which is propelled by electric power obtained from batteries or from overhead trolley wires, but not operated upon rails[.]" § 66–1–4(B)(39). The term "vehicle" is defined in the Code as follows: " '[V]ehicle' means every device in, upon or by which any person or property is or may be transported or drawn upon a highway, including any frame, chassis or body of any vehicle or motor vehicle, except devices moved by human power or used exclusively upon stationary rails or tracks[.]" § 66–1–4(B)(74).

■ Our courts have previously interpreted the language of the statutes in order to decide whether a particular mechanical device is or is not a motor vehicle within the meaning of the Code. Although none of these cases involved the issue presented by the present case, we consider them in analyzing the legislature's intent in imposing criminal liability for great bodily injury by vehicle. We conclude that the phrase "is or may be transported or drawn upon a highway," *see* Section 66–1–4(B)(74), indicates a legislative intent to define a device typically and lawfully used upon a highway to transport persons and property.

In *Smith Machinery Corp. v. Hesston, Inc.,* 102 N.M. 245, 694 P.2d 501 (1985), the supreme court held that a windrower, a mechanical device used for farming, is not a motor vehicle within the meaning of the Motor Vehicle Dealers Franchising Act, NMSA 1978, Sections 57–16–1 to –16 (Repl. Pamp.1987) (the Act). Although the Act defined the term "motor vehicle" in slightly different language, the supreme court, in considering the issue, considered the Code and cases cited under it. The court held that, although a windrower is self-propelled, it is not a motor vehicle within the meaning of the Code because it is not typically used on the highways. *See also Gibbons & Reed Co. v. Bureau of Revenue,* 80 N.M. 462, 465, 457 P.2d 710, 713 (1969) (holding a mole, a piece of machinery used for mining, is not a vehicle within the

meaning of the Code because it is not a device upon, or by which, persons or property may be transported upon a highway); *Pittsburgh & Midway Coal Mining Co. v. Revenue Div., Taxation & Revenue Dep't*, 99 N.M. 545, 559, 660 P.2d 1027, 1041 (Ct. App.), *appeal dismissed*, 464 U.S. 923, 104 S.Ct. 323, 78 L.Ed.2d 296 (1983) (dragline is not a motor vehicle under the Code because it is not a machine that can be driven or used on the highway); *Kaiser Steel Corp. v. Revenue Div., Taxation & Revenue Dep't*, 96 N.M. 117, 628 P.2d 687 (Ct.App. 1981) (holding a dragline and a continuous miner powered by overhead electrical cables are not motor vehicles under the Code, in part because they are not typically used on the highways).

■ Defendant contends that a snowmobile may not, as a matter of law, be used on a public road, street, or highway. The state contends that such operation is lawful. We agree with defendant.

The legislature has addressed the subject of snowmobiles in a statute that is not part of the Code. *See* NMSA 1978, §§ 66–9–1 to –13 (Repl.Pamp.1987) (the Snowmobile Act). The Snowmobile Act defines a snowmobile as a "motorized vehicle designed for operation on snow or ice, principally for recreational purposes." § 66–9–2(A); *see also Vandolsen v. Constructors, Inc.*, 101 N.M. 109, 114, 678 P.2d 1184, 1189 (Ct.App. 1984) (snowmobiles are designed for off-road recreational use).

In addition, the Snowmobile Act specifically addresses the issue of whether a snowmobile can be operated on the highways. *See* § 66–9–9. By law, a snowmobile may not be operated on any limited access highway or freeway at any time. § 66–9–9(A). A snowmobile is permitted to cross a street or highway only after coming to a complete stop; even then, it must yield to oncoming traffic, and cross in the most direct manner possible. § 66–9–9(B). A snowmobile may be operated on public roads, streets, or highways only when the road, street, or highway is closed to automotive traffic, or is not regularly plowed or maintained, or if permitted by local ordinance or resolution adopted by the govern-

ing body of a municipality or county in regulating streets and highways under its jurisdiction. § 66–9–9(D)(1), (4). In addition, the Snowmobile Act specifically provides for operation of snowmobiles during periods of emergency or special events of limited duration. § 66–9–9(D)(2), (3). In short, it is apparent that, by law, a snowmobile may not be operated on the public highways.

The state argues that at least one state has held that a snowmobile is a motor vehicle within the terms of that state's motor vehicle code. *See Melby v. Commissioner of Pub. Safety*, 367 N.W.2d 527 (Minn.1985). In *Melby*, the Minnesota Supreme Court held Minnesota's implied consent law applied to drivers of snowmobiles when the snowmobile was being operated on the public streets or highways. The critical issue in that case was whether the snowmobile operator had been operating the snowmobile on a highway within the meaning of the statutes. The statute governing snowmobiles made the statutes governing motor vehicles applicable when the snowmobile was operated on a street or highway. Under these circumstances, it appears the Minnesota statutory scheme clearly evidenced a legislative intent not present in the New Mexico statutes.

Moreover, we can hardly ignore the fact that the weather and road conditions in Minnesota are substantially different from those in New Mexico. In Minnesota it may be sensible, even necessary at times, to operate a snowmobile on the public streets or highways. In New Mexico, this is prohibited by law.

Finally, the state argues that the snowmobile should be considered a motor vehicle because the Snowmobile Act "does not proscribe the actual conduct and prohibited consequence caused by the Defendant's criminal act." This argument is best addressed to the legislature. It is for the legislature to determine what conduct shall be prohibited and what penalty shall be exacted for the conduct. *See, e.g., State v. Allen*, 77 N.M. 433, 423 P.2d 867 (1967). The Snowmobile Act prohibits the reckless operation of a snowmobile and provides

such reckless operation is a petty misdemeanor. §§ 66–9–8(B)(1), 66–9–13. We cannot disturb the legislature's judgment in this matter.

■ We conclude that the legislature's choice of language in the Code, together with the enactment of the Snowmobile Act, indicates an intent that the term "motor vehicle" does not include a snowmobile. Accordingly, we reverse defendant's conviction on Count I and remand to the trial court with instructions to vacate defendant's conviction on this count and to dismiss Count I of the indictment. This disposition makes it unnecessary to address all of defendant's other contentions related to this count. Accordingly, we do not address his issues concerning the jury instructions or improprieties in the grand jury proceeding.

## APPLICATION OF RULE 5–604

Defendant was indicted January 26, 1987, and arraigned February 5, 1987. In early June 1987, pursuant to Rule 5–604(C), the state asked for and received from the supreme court an extension of time for the commencement of trial until August 31, 1987, on the ground that two state's witnesses were out of the country. In July 1987, the trial court denied a number of motions and certified the denial of the motions for interlocutory appeal. In August 1987, the state asked the supreme court for a second extension of time for the commencement of trial. The supreme court gave the state an extension until December 31, 1987.

On September 29, 1987, this court denied defendant's application for leave to file an interlocutory appeal. This court's mandate was issued October 29, 1987, and filed in the district court October 30, 1987. The trial court scheduled the trial for November 30, 1987. However, on that day, the trial court postponed the trial until February 29, 1988. On January 22, 1988, defendant moved to dismiss the indictment, alleging the state violated his right to a speedy trial under Rule 5–604. The trial court denied the motion, and trial commenced February 29, 1988.

On appeal, defendant argues that the trial court should have granted his motion to dismiss, because the state failed to bring him to trial within the time specified by the order of the supreme court. The state, on the other hand, contends that the running of the extension granted by the supreme court was tolled from the time the trial court granted defendant permission to take an interlocutory appeal until the time this court's mandate was issued, a period of sixty-four days. The state points out the trial started sixty days from December 31, 1987, and thus the trial was timely commenced within the period of the extension. We note that this court recently rejected a similar argument by the state, attempting to create a tolling provision where none exists in the statute. *See State v. Mendoza,* Ct.App. No. 10,688 (Filed February 7, 1989), *cert. granted.*

Rule 5–604(B) provides in pertinent part: The trial of a criminal case ... shall be commenced six (6) months after whichever of the following events occurs latest:

. . . .

(4) in the event of an appeal, including interlocutory appeals, the date the mandate or order is filed in the district court disposing of the appeal

. . . .

We apply the same rules to the construction of rules of procedure adopted by our supreme court as are applied to statutes. *State v. Mendoza.* We read the rule in accordance with its plain meaning. *Id.* When the language of the rule is not defined in the rule, it is given its ordinary meaning. *Id.* Our role is to discern and give effect to the author's intent. *Id.*

Defendant argues that Rule 5–604 should not be applied in this case because his application for interlocutory appeal was denied, and consequently this court never assumed jurisdiction. *See State v. Hernandez,* 95 N.M. 125, 619 P.2d 570 (Ct.App. 1980). We believe this is precisely the type of technical argument the rule was meant to avoid. The purpose of the rule is to assure prompt disposition of criminal cases, not to effect dismissals by technical appli-

cations of the rule. *State v. Flores,* 99 N.M. 44, 46, 653 P.2d 875, 877 (1982) (decided under former rule). The committee commentary to the rule makes it clear that an extension under subsection C is not necessary if the commencement of trial is delayed for one of the reasons listed in subsection B. *See* Committee Commentary, R. 5–604. Committee commentaries are persuasive authority. *See State v. Orona,* 97 N.M. 232, 235, 638 P.2d 1077, 1080 (1982).

■ The rule does not speak in terms of the trial court's jurisdiction; it speaks in terms of the issuance of an appellate court mandate. We believe this language is deliberate. Whether or not the application for interlocutory appeal is ultimately granted, the process of applying for an interlocutory appeal takes time. Thus, the rule provides for an extension of time for the commencement of trial, and adopts the date of the filing of the mandate in district court, a date that can be easily ascertained and will ordinarily appear in the record, as the time for the commencement of a new six-month period in which to commence trial. Because the trial in this case was commenced within six months of the issuance of this court's mandate denying the application for interlocutory appeal, the trial was commenced within the time provided for by rule. The trial court correctly denied defendant's motion to dismiss.

## ADMISSION OF THE RESULTS OF THE BREATH TEST

■ Defendant contends the trial court improperly admitted the results of the breath alcohol test given him shortly after his arrest the day of the accident. As noted above, the jury did not convict defendant of driving the snowmobile while intoxicated. Moreover, we have already held that defendant's conviction for great bodily injury must be set aside. However, evidence of intoxication, if otherwise admissible, can properly be considered as evidence of reckless driving. *State v. Richerson,* 87 N.M. 437, 439, 535 P.2d 644, 646 (Ct.App. 1975). Moreover, in the context of this case, we cannot say with certainty that the admission of this evidence was harmless

error as to the conviction for reckless operation of a snowmobile. *See State v. Moore,* 94 N.M. 503, 612 P.2d 1314 (1980). Thus, we address defendant's contentions concerning the breath test.

First, defendant argues the breath test was inadmissible because it was the fruit of an illegal arrest. Defendant contends that, although he was later charged with a felony, he was arrested for the misdemeanor offenses of reckless driving and driving while intoxicated. Defendant argues that a warrantless arrest for a misdemeanor is valid only if the misdemeanor occurred in the presence of the officer. Since it was undisputed below that the officer who arrested defendant had not observed defendant driving a snowmobile while intoxicated, defendant contends the arrest was illegal. The state, on the other hand, argues defendant's arrest was valid under Section 66–8–125. We agree with the state.

Section 66–8–125 provides in pertinent part as follows:

A. Members of the New Mexico state police, sheriffs and their salaried deputies and members of any municipal police force, may arrest without warrant any person:

(1) present at the scene of a motor vehicle accident;

. . . .

B. To arrest without warrant, the arresting officer must have reasonable grounds, based on personal investigation which may include information from eyewitnesses, to believe the person arrested has committed a crime.

This court has previously indicated that the statute provides an alternate basis for an arrest to the usual rules governing warrantless misdemeanor arrests. *See State v. Lyon,* 103 N.M. 305, 308, 706 P.2d 516, 519 (Ct.App.1985); *State v. Calanche,* 91 N.M. 390, 574 P.2d 1018 (Ct.App.1978) (recognizing that an arrest may be valid under the statute even though not a valid misdemeanor arrest because the offense was not committed in the presence of the officer).

At the hearing on the motion to suppress, the trial court heard testimony from

the officer who arrested defendant, Officer Paul Brady of the New Mexico State Police. Defendant admitted to Officer Brady that he had been driving the snowmobile involved in the accident Officer Brady was investigating. Officer Brady testified that when he first came into contact with defendant, he smelled a strong odor of intoxicating liquor on defendant's breath. Officer Brady advised defendant that he, the officer, had noticed an odor on defendant's breath and would want defendant to perform some field tests. Defendant responded that he had had a beer at noon. Officer Brady further testified that during his more than three years with the state police, he estimated that he had arrested over 100 persons for the offense of driving while intoxicated, and that it was common for persons to respond that they had had only one beer. Officer Brady then read defendant his Miranda rights and took him into a nearby restaurant. After giving defendant some time to get warm, Officer Brady gave defendant four field sobriety tests. As a result of the tests, Officer Brady placed defendant under arrest for driving while under the influence of intoxicating liquor, advised defendant of the implied consent law, and administered a breath alcohol test known as the SM-7. Defendant contends this test is the fruit of an illegal arrest.

■ On these facts, we hold defendant's arrest was valid under the terms of the statute. Defendant was certainly an eyewitness to the accident in question. His admission that he had been driving the snowmobile involved in the accident and had been drinking alcohol at some point earlier, coupled with the officer's testimony that he smelled a strong odor of intoxicating liquor on defendant's breath, and defendant's apparent inability to pass the field sobriety tests, was sufficient to give the officer reasonable grounds to believe that defendant had committed the offense of driving while intoxicated. Moreover, this court has previously held that an appropriate officer may arrest a person who was present at the scene of the accident, even though that person has left the scene, so long as the arrest takes place within a reasonable period of time after the accident. *See State v. Calanche.*

■ We recognize that we have held a snowmobile is not a motor vehicle within the meaning of the Code, and that defendant's arrest was under the provisions of the Code. Nevertheless, we do not believe the reasonable but mistaken belief of the officer that the snowmobile was a motor vehicle is a sufficient basis for invalidating an otherwise valid arrest. *Cf. United States v. Allen,* 629 F.2d 51 (D.C.Cir.1980) (mistaken belief that a place is not licensed to serve liquor does not invalidate an otherwise valid arrest).

■ Finally, defendant contends the results of the breath test should not be admitted because Officer Brady was not certified to give the breath test at the time, and because under the circumstances, including the fact that defendant had alcoholic beverages after the accident and before the test, the test was not reliable. This court has previously held that these factors go to the weight of the evidence, not its admissibility. *See State v. Watkins,* 104 N.M. 561, 724 P.2d 769 (Ct.App.1986).

## DOUBLE JEOPARDY

At a pre-trial motions hearing in this case, the state stipulated to the dismissal of two charges: driving while intoxicated and reckless driving. Defendant claims these were lesser included offenses of the felony charge of great bodily harm by vehicle, and that trial on the greater charge after dismissal of the lessers violated his right to be free of double jeopardy. He argues the dismissal was tantamount to an acquittal of those charges.

■ We do not determine whether these charges were indeed lesser included offenses because defendant's claim is without merit and is frivolous. Jeopardy attaches only when the jury is impaneled, or, in a bench trial, when the state presents some evidence. *State v. James,* 93 N.M. 605, 603 P.2d 715 (1979). Because the charges were dismissed at a pre-trial hearing, jeopardy had not yet attached. This question was clearly answered adversely to defendant in

**744**

*State v. Rhodes,* 76 N.M. 177, 413 P.2d 214 (1966) (where some charges were dismissed before trial, double jeopardy did not bar prosecution of the remaining charges).

## CONCLUSION

In summary, we hold that a snowmobile is not a motor vehicle within the meaning of the Code.  Thus, we reverse defendant's conviction on Count I of the charges, and remand this case to the trial court with instructions to vacate that conviction and dismiss that charge.  For the reasons set forth above, we affirm defendant's conviction for reckless driving of a snowmobile.

IT IS SO ORDERED.

ALARID and MINZNER, JJ., concur.